IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MARVIN JONES                                                        PLAINTIFF

v.                                          CIVIL ACTION NO. 4:10-CV-00011-GHD-JMV

TYSON FOODS, INC.; HALEY BARBOUR,
in His Official Capacity of Governor of the State
of Mississippi; CHRISTOPHER EPPS, in His Individual
and Official Capacities as Commissioner of the Mississippi
Department of Corrections; LEE McTEER, in His Official
Capacity as Community Correctional Director for Region I and
in His Individual Capacity; JONATHAN BRADLEY,[1] in His
Official Capacity as Correctional Supervisor of Leflore County
Restitution Center and in His Individual Capacity          DEFENDANTS

## MEMORANDUM OPINION RULING ON MOTIONS TO DISMISS ON ELEVENTH AMENDMENT IMMUNITY GROUNDS

Presently before the Court are motions to dismiss filed by Defendants Lee McTeer and

Jonathon Bradley [16], Haley Barbour [35], and Christopher Epps [37], all in their official

capacities.   These motions have been fully briefed and are ripe for review.   Upon due

consideration, the Court finds McTeer's and Bradley's motion to dismiss [16] shall be denied,

and Barbour's motion to dismiss [35] and Epps' motion to dismiss [37] shall each be granted in

part and denied in part.[2]

### A. Factual and Procedural Background

Plaintiff Marvin Jones ("Plaintiff"), a former resident of Leflore County Restitution

Center, brings this suit for monetary and declaratory relief, alleging that his constitutional rights

---

[1] It appears that the correct spelling of Defendant Bradley's first name is "Jonathon" and not "Jonathan" as stated in the case caption. The Court will use the corrected spelling in this opinion and corresponding Order.

[2] The Court finds that Plaintiff's requests for hearing or oral argument on these Defendants' motions to dismiss on Eleventh Amendment immunity grounds are not well taken, as the Court finds that a hearing or oral argument is not necessary to a ruling on the present motions.

were violated when he was subjected to dangerous conditions and contracted mycobacterium tuberculosis ("TB") while fulfilling the terms of his restitution at a chicken-processing plant, Tyson Foods, Inc., in Carthage, Mississippi ("Tyson"). Plaintiff sues Tyson; Haley Barbour, in his official capacity as the then-Governor of Mississippi ("Barbour"); Christopher Epps, in his individual capacity and official capacity as the Commissioner of the Mississippi Department of Corrections ("Epps"); Lee McTeer, in his individual capacity and official capacity as the Community Correctional Director for Region I ("McTeer"); and Jonathon Bradley, in his individual capacity and official capacity as the Correctional Supervisor of Leflore County Restitution Center ("Bradley").

Plaintiff alleges the following facts: After serving a three-month term at the Clay County Jail for embezzling money from a Dollar General store, Plaintiff was assigned to Leflore County Restitution Center. Bradley immediately assigned Plaintiff to work at the Tyson Foods chicken plant in Carthage, Mississippi, as a chicken hanger, a position which required Plaintiff to "hang[ ] live chickens on a moving wire by their feet in an environment filled with dust, feathers, and chicken feces." Pl.'s Am. Compl. [12] ¶ 20. Plaintiff "had to conduct his work among chickens compelled to release feces due to the nature in which [Tyson] was processing the poultry"; thus, Plaintiff "would, at times, be covered in chicken feces." *Id.* ¶ 24. Despite knowledge of the physical danger of exposure to TB, Defendants failed to test Plaintiff monthly for TB. *Id.* ¶ 39. Plaintiff began to suffer swelling in his face, neck, and hands. *Id.* ¶ 32. Plaintiff asked his work supervisor if he could see the company's nurse, but the supervisor would not allow him to do so. *Id.* After two weeks at Tyson, Plaintiff could no longer fulfill his work obligations due to his medical ailments; thus, Plaintiff returned to Leflore County Restitution Center, where he awaited his next assignment. *Id.* ¶ 33. Bradley became angry towards Plaintiff "because [Plaintiff] could

2

not fulfill his duties" at Tyson, and Bradley did not assign Plaintiff to work at any other facility for two months, during which time Plaintiff was "essentially left in limbo." *Id.* ¶ 34. Bradley then assigned Plaintiff to work at Tyson again, "contrary to [Plaintiff's] best interest and despite the fact [that] he had a medical condition hampering his productivity at [Tyson]." *Id.* ¶ 37. "Despite earning the money to satisfy his restitution and any other legitimate outstanding debt, [Plaintiff], against his will, was forced to remain at [Leflore County Restitution Center] while at [Tyson]." *Id.* ¶ 40. Plaintiff was then released from Leflore County Restitution Center and allowed to return home. *Id.* ¶ 41. After his release, Plaintiff received a letter from the Mississippi State Department of Health informing him that he may have been exposed to TB during his assignment at Tyson. *Id.* ¶¶ 42, 65. After undergoing a tuberculin skin test, Plaintiff learned that he did, in fact, have TB. *Id.* ¶ 42. As a result of the disease, Plaintiff suffers from "muscle spasms, acute fever, night sweats, loss of appetite, weight loss, and a host of side effects from medications he must take" and is "unable to work." *Id.* ¶ 43.

Plaintiff's claims may be summarized as follows: **(1)** Plaintiff's constitutional rights were violated pursuant to 42 U.S.C. § 1983, when he was forced to fulfill his restitution at Tyson, thus subjecting him to cruel and unusual punishment in violation of the Eighth Amendment and Fourteenth Amendment, slavery/indentured servitude in violation of the Thirteenth Amendment, and lack of procedural and substantive due process in violation of the Fourteenth Amendment; **(2)** Defendants failed to provide adequate training and/or supervise their administration, staff, and/or faculty not to violate Plaintiff's and other residents' Eighth, Thirteenth, and Fourteenth Amendment rights in violation of Section 1983; **(3)** "Defendants conspired to deprive, by force, intimidation, or threat, [Plaintiff] from receiving his freedom after he satisfied the terms of his sentencing" in violation of 42 U.S.C. § 1985, *id.* ¶ 2; and **(4)** Defendants were negligent and/or

grossly negligent in providing an unsanitary work environment for Plaintiff, thus causing him foreseeable harm. Plaintiff alleges that all acts by Defendants were conducted "under the color and pretenses of the ordinances, policies, practices, customs, regulations, usages[,] and/or statutes of the Counties of Leflore and/or Leake, as well as the State of Mississippi." *Id.* ¶ 44. Plaintiff further alleges that it is the policy, practice, or custom of Defendants to suppress the constitutional and statutory rights of those residents entrusted to their care, *id.* ¶¶ 46–49, and that "[t]he unlawful actions of Defendants . . . were taken or ratified by final policy makers for [Leflore County Restitution Center] and thus constitute policies, practices[,] and usage sufficient to impose liability," *id.* ¶ 50.

In lieu of answering the amended complaint [12], Defendants Barbour, Epps, McTeer, and Bradley have filed Rule 12(b)(1) motions to dismiss the official-capacity claims against them on Eleventh Amendment immunity grounds; Tyson has filed a Rule 12(b)(6) motion to dismiss the claims against it; and Defendants Epps, McTeer, and Bradley have filed a Rule 56 motion for summary judgment [48] on the individual-capacity claims against them.

Courts should address a Rule 12(b)(1) motion, such as a motion for dismissal on Eleventh Amendment immunity grounds, before addressing a motion on the merits. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *United States v. Tex. Tech Univ.*, 171 F.3d 279, 285–86 (5th Cir. 1999). Thus, it is proper for the Court to first rule on the Eleventh Amendment immunity motions to dismiss before delving into the other motions. Accordingly, in this opinion and corresponding order, the Court will rule only on the Eleventh Amendment immunity motions to dismiss filed by Defendants Barbour, Epps, McTeer, and Bradley ("these Defendants") concerning the claims against them in their official capacities.

## *B. Rule 12(b)(1) Standard*

"[A] factual attack under Rule 12(b)(1) may occur at any stage of the proceedings, and

plaintiff bears the burden of proof that jurisdiction does in fact exist." *Arena v. Graybar Elec.*

*Co.*, 669 F.3d 214, 223 (5th Cir. 2012) (quoting *Menchaca v. Chrysler Credit. Corp.*, 613 F.2d

507, 511 (5th Cir. 1980) (citations omitted)). In such a consideration, the court must

> take the well-pled factual allegations of the complaint as true and
> view them in the light most favorable to the plaintiff. . . . [U]nder
> Rule 12(b)(1), the court may find a plausible set of facts by
> considering any of the following: (1) the complaint alone; (2) the
> complaint supplemented by the undisputed facts evidenced in the
> record; or (3) the complaint supplemented by undisputed facts plus
> the court's resolution of disputed facts.

*Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citations and internal quotation marks

omitted). As stated, these Defendants' Rule 12(b)(1) motions to dismiss are brought on

sovereign immunity grounds.

## *C. Sovereign Immunity*

Sovereign immunity is a broad jurisdictional doctrine prohibiting suit against the

government absent the government's consent. Sovereign immunity was assumed at common

law, brought from England to the colonies, and existed prior to the ratification of the United

States Constitution. Although the term "sovereign immunity" nowhere appears in the

Constitution, the concept was perhaps woven into the very fabric of the document. Andrew

Hamilton explained:

> It is inherent in the nature of sovereignty not to be amenable to the
> suit of an individual without its consent. This is the general sense,
> and the general practice of mankind; and the exemption, as one of
> the attributes of sovereignty, is now enjoyed by the government of
> every State in the Union.

5

THE FEDERALIST No. 81, at 511 (Alexander Hamilton) (Wright ed., 1961). At the Virginia ratifying convention, James Madison stated: "Jurisdiction in controversies between a state and citizens of another state is much objected to, and perhaps without reason. It is not in the power of any individuals to call any state into court." 3 DEBATES ON THE FEDERAL CONSTITUTION 533 (J. Elliot 2d ed., 1854). At that same convention, John Marshall stated: "With respect to disputes between a state and the citizens of another state, its jurisdiction has been decried with unusual vehemence. I hope no gentleman will think that a state will be called at the bar of the federal court." 3 *id.*, at 555.

Despite the long-standing principle of sovereign immunity, in 1793, the United States Supreme Court held that a state could be sued by a citizen of another state or a foreign country. *See Chisolm v. Georgia*, 2 U.S. 419, 2 Dall. 419, 1 L. Ed. 440 (1793). But five years later, the states ratified the Eleventh Amendment, which provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI; *see* C. JACOBS, THE ELEVENTH AMENDMENT AND SOVEREIGN IMMUNITY 64–75 (1972). The Fifth Circuit has stated: "Eleventh Amendment immunity operates like a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state." *Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011) (internal citations omitted). "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002) (citation omitted). Indeed, "[t]he amendment has been judicially construed to bar federal jurisdiction over suits brought against a state by its own citizens, despite the absence of language to that effect." *See*

6

*Jagnandan v. Giles*, 538 F.2d 1166, 1177 (5th Cir.), *cert. denied*, 432 U.S. 910, 97 S. Ct. 2959, 53 L. Ed. 2d 1083 (1977) (internal citations omitted).

### D. Analysis and Discussion

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). "The state need not be the named party in a federal lawsuit, for a state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). Because only "alter egos" or "arms of the state" can assert a state's immunity, *see Alden v. Maine*, 527 U.S. 706, 756, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999), before delving into the sovereign immunity analysis, the Court must first determine whether each of these Defendants is, in fact, an alter ego or arm of the State subject to sovereign immunity.

The Governor, as chief of the State's Executive Branch, is unquestionably an arm of the State subject to sovereign immunity. Epps, as Commissioner of the Mississippi Department of Corrections ("MDOC"), is also an arm of the State, as MDOC is responsible for managing and operating the correctional system for the State and thus is an arm of the State. *See* MISS. CODE ANN. § 47-5-1. *See also Hines v. MDOC*, 239 F.3d 366, 2000 WL 1741624, *3 (5th Cir. Nov. 14, 2000) (per curiam) ("[MDOC] is a department of the state of Mississippi and enjoys the same immunity as the state itself."); *accord Martin v. Streeter*, No. 3:11cv20–SA–DAS, 2012 WL 5269615, *2 (N.D. Miss. Oct. 24, 2012); *Ladner v. Leamon*, No. 2:12cv131–KS–MTP, 2012 WL 4507904, *1 (S.D. Miss. Sept. 28, 2012); *Clayborne v. MDOC*, No. 2:06cv250-KS-MTP, 2007 WL 2475945, *1 (S.D. Miss. Aug. 28, 2007).

Thornier questions are whether McTeer, as the Community Correctional Director for Region I, and Bradley, as the Correctional Supervisor of Leflore County Restitution Center, are considered arms of the State subject to sovereign immunity. These questions concern the Court's jurisdiction, which the Court may raise at any time *sua sponte*. Under Eleventh Amendment jurisprudence, "[n]ot all political subdivisions are automatically immunized when the state is immunized." *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000) (per curiam). Only political subdivisions that "stand[ ] in the shoes of the state itself" benefit from sovereign immunity. *Id.* (quotation marks and citation omitted); *see Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999) ("Courts are frequently put in the position of deciding whether the defendant being sued is better described as an arm of the state partaking in the privileges of Eleventh Amendment immunity or whether the defendant is actually part of a political subdivision unprotected by the Eleventh Amendment."). The Eleventh Amendment's protections do not extend to political entities that have an identity sufficiently distinct from that of the state, which includes "lesser governmental entities such as counties and municipalities." *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 596 (5th Cir. 2006).

To determine whether an entity is an arm of the state entitled to Eleventh Amendment sovereign immunity, the Court considers six factors: (1) whether the state statutes and case law characterize the agency as an arm of the state; (2) the source of funding for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local rather than state-wide problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *See Raj v. LSU*, 714 F.3d 322, 328–29 (5th Cir. 2013) (citing *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991)). A defendant need not satisfy all of the factors to benefit from the Eleventh

Amendment, and some factors weigh more heavily than others. *Hudson*, 174 F.3d at 681–82. Specifically, the source of funding is the most important factor, and the last two factors are least important. *Id.* at 682.

As stated, McTeer is the Community Correctional Director for Region I. Region I is a regional mental health care provider servicing four counties in the State: Coahaoma, Quitman, Tallahatchie, and Tunica. Region I, which is partially funded by the Mississippi Department of Mental Health, is supervised by a regional commission that is appointed by the boards of supervisors of the counties in the commission's service area. *See* MISS. CODE ANN. § 41–19–33. Plaintiff alleges in his amended complaint that he is suing McTeer as Community Correctional Director for Region I, which includes the Leflore County Restitution Center; Plaintiff further alleges that McTeer was responsible for the day-to-day operations of the Leflore County Restitution Center while Plaintiff was a resident there. *See* Pl.'s Am. Compl. [12] ¶ 13. Without mentioning the six factors or providing evidence to support that Region I is an arm of the State entitled to sovereign immunity, these Defendants contend that Region I is a state entity, state agency, or state department entitled to immunity. *See* Mem. Br. Supp. McTeer & Bradley's Mot. Dismiss [17] at 4–5. These contentions, without more, pose a mere facial attack and do not entitle McTeer to dismissal under Rule 12(b)(1) at this juncture, as the allegations in Plaintiff's amended complaint against McTeer are sufficient to allege jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) ("Since here we have only a 'facial attack' and not a 'factual attack,' our review is limited to whether the complaint is sufficient to allege the jurisdiction."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal citation and quotation marks

9

omitted). Having reviewed the state statute authorizing the mental health regional commissions, Mississippi Code § 41–19–33, as well as the face of Plaintiff's amended complaint, the Court cannot conclude that Plaintiff is incapable of proving a plausible set of facts that can establish that Region I is not an arm of the State. Plaintiff is at least entitled to discovery on this issue. For these reasons, the Court finds that McTeer is not entitled to sovereign immunity at this juncture, and McTeer and Bradley's motion to dismiss [16] shall thus be denied insofar as it pertains to McTeer.

Also, as stated, Bradley is the Correctional Supervisor of Leflore County Restitution Center, which is one of four restitution centers under MDOC.[3] *See Lewis v. Thigpen*, 767 F.2d 252, 253 (5th Cir. 1985) ("Leflore County Restitution Center [is] an institution under [MDOC]."). Leflore County Restitution Center (the "Restitution Center") is "a public service work program for state inmates in custody of the county" that was "established at the option of [Leflore C]ounty in accordance with the provisions of Sections 47-5-401 through 47-5-421." *See* MISS. CODE ANN. § 47-5-401(1). The Fifth Circuit has stated generally about the Restitution Center:

> The purpose of the Restitution Center is to provide offenders with an alternative to confinement at the main penitentiary facility at Parchman while ensuring restitution to victims of property crimes. The program at the Restitution Center provides assistance in obtaining employment, and each participant accordingly is required to maintain employment, as well as to work at the Restitution Center itself and in community service projects. Participants are to make a good faith effort toward restitution and are required to report their earnings. Participants in the program enjoy considerably more freedom than they would at Parchman. While in the program, participants earn "points" by maintaining good behavior and following the Restitution Center's rules and regulations. Once a participant has earned a sufficient number of points, the participant may be granted a pass to leave the

---

[3] The other restitution centers under MDOC are located in Hinds County (Jackson), Jackson County (Pascagoula), and Rankin County (Flowood).

> Restitution Center's premises for a period up to forty-eight hours. Upon earning a sufficient number of points, at least some participants in the program are eligible for release.

*Lewis*, 767 F.2d at 254–55 (footnote omitted). Although the Restitution Center is doubtless an amalgam of the State and Leflore County, the Restitution Center only exists at Leflore County's option and is a community-based facility that was voluntarily instituted by Leflore County. *See, e.g., United States v. Doe*, 871 F.2d 1248, 1251 (5th Cir. 1989) (referring to a similar institution in Texas, Bexar County Adult Probation Restitution Center, as a community-based facility).

Plaintiff alleges in his amended complaint that he is suing Bradley as the Correctional Supervisor for Leflore County Restitution Center; Plaintiff further alleges that Bradley was responsible for the day-to-day operations of the Leflore County Restitution Center while Plaintiff was a resident there. *See* Pl.'s Am. Compl. [12] ¶ 14. These Defendants contend that Bradley is entitled to sovereign immunity, contending that the Restitution Center is a state entity, state agency, or state department. *See* Mem. Br. Supp. McTeer & Bradley's Mot. Dismiss [17] at 4–5. These contentions, without more, pose a facial attack not entitling Bradley to dismissal under Rule 12(b)(1) at this juncture, as the allegations in Plaintiff's amended complaint against Bradley are sufficient to allege jurisdiction. Given the presence of these issues, the Court cannot conclude that Plaintiff is incapable of proving a plausible set of facts that can establish that the Restitution Center is not an arm of the State. Plaintiff is at least entitled to discovery on this issue. Thus, the Court finds that Bradley is not entitled to sovereign immunity at this juncture, and McTeer and Bradley's motion to dismiss [16] shall be denied insofar as it pertains to Bradley.

Therefore, McTeer and Bradley's motion to dismiss [16] shall be denied in its entirety, as the Court does not find at this juncture that McTeer and Bradley are arms of the State subject to

sovereign immunity. However, because the Court finds that Barbour and Epps are arms of the State, Barbour and Epps are entitled to Eleventh Amendment immunity unless **(1)** Congress has validly abrogated the State's sovereign immunity; **(2)** the State has waived sovereign immunity or consented to suit; or **(3)** the *Ex parte Young* doctrine renders the State amenable to suit.

### **(1) Abrogation**

Congress may abrogate a State's sovereign immunity by unequivocally expressing its intent to abrogate the immunity in a federal statute and acting pursuant to a valid exercise of power. *Arizona v. United States*, ___ U.S. ___, 132 S. Ct. 2492, 2514, 183 L. Ed. 2d 351 (June 25, 2012) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996) (internal quotation marks and citation omitted)). Plaintiff's federal claims are brought pursuant to Sections 1983 and 1985. Section 1983 does not explicitly indicate Congress's intent to abrogate a state's Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). Section 1985, which was originally adopted as part of the Civil Rights Act of 1871, similarly does not explicitly indicate Congress's intent to abrogate a state's Eleventh Amendment immunity. *Early v. So. Univ. & Agr. & Mech. Coll. Bd. of Supervisors*, 252 F. App'x 698, 700 (5th Cir. 2007) (per curiam) (citing *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981)). Thus, Sections 1983 and 1985 do not abrogate the State's Eleventh Amendment immunity from this suit. The Court now looks to whether suit may be brought against these Defendants in their official capacities due to either the State's waiver/consent to suit or the *Ex parte Young* doctrine.

12

## (2) Waiver/Consent to Suit

Barbour and Epps maintain that the State has neither waived immunity nor consented to suit on any of the claims presented in this case. Eleventh Amendment sovereign immunity from suit is waiveable, but such waiver must be clearly stated and will not be easily implied. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997); *Jagnandan*, 538 F.2d at 1117 (citing *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); *Petty v. Tenn.-Mo. Bridge Comm'n*, 359 U.S. 275, 276, 79 S. Ct. 785, 3 L. Ed. 2d 804 (1959)). It is well established that the State of Mississippi is absolutely immune from suit on Section 1983 and Section 1985 claims under the Eleventh Amendment. *Stokes v. Ward*, 132 F.3d 1455, 1997 WL 802955, *2 (5th Cir. Nov. 21, 1997) (per curiam); *see Bogard v. Cook*, 586 F.2d 399, 410 (5th Cir. 1978). Thus, the Court finds that the State has not waived its Eleventh Amendment sovereign immunity in this case.

With respect to Plaintiff's state tort claims against Barbour and Epps, the Court notes that "[e]ven when a State consents to suit in its own courts, . . . it may retain Eleventh Amendment immunity from suit in federal court." *Martinez v. Tex. Dep't of Criminal Justice*, 300 F.3d 567, 575 (5th Cir. 2002). The Mississippi Tort Claims Act (the "MTCA") expressly preserves the State's Eleventh Amendment immunity on such claims brought in federal court. The MTCA recites that "the 'state' and its 'political subdivisions' . . . are not now, have never been and shall not be liable, and are, always have been and shall continue to be immune from suit at law or in equity[.]" Miss. Code Ann. § 11–46–3(1). The MTCA also expressly provides that "[n]othing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."

MISS. CODE ANN. § 11–46–5(4). Thus, the Court finds that the State has not waived its immunity from suit on the state law claims.

"A state's waiver of immunity must be unequivocal. It may evidence that waiver, however, through action other than an express renunciation, [such as in cases] "where the state assert[s] claims of its own or evidence[s] an intent to defend the suit against it on the merits." *Neinast v. Texas*, 217 F.3d 275, 279 (5th Cir. 2000) (internal footnotes omitted). "[T]he decision to waive that immunity must be voluntary on the part of the sovereign. Generally, the [c]ourt will find a waiver either if (1) the state voluntarily invokes federal court jurisdiction, or (2) the state makes a 'clear declaration' that it intends to submit itself to federal court jurisdiction." *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 241 (5th Cir. 2005) (also holding a state voluntarily invokes federal jurisdiction by removing the case to federal court).

In the case *sub judice*, Barbour and Epps raised the sovereign immunity defense in lieu of answering the complaint and have by no means voluntarily asserted claims of their own, evidenced an intent to defend the suit on the merits, or otherwise voluntarily invoked federal court jurisdiction. Accordingly, the Court finds that the State has neither waived nor consented to suit on any of the claims asserted in this action. The Court now examines whether Plaintiff's claims against Barbour and Epps in their official capacities may be brought under *Ex parte Young*.

### (3) *Ex parte Young* Doctrine

In determining whether the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), avoids an Eleventh Amendment bar to suit, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Cantu Servs., Inc. v. Roberie*, —— F.

App'x ——, 2013 WL 3420524, *3 (5th Cir. July 9, 2013) (quoting *Va. Office for Prot. & Advocacy v. Stewart*, —— U.S. ——, 131 S. Ct. 1632, 1639, 179 L. Ed. 2d 675 (2011) (in turn quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002) (internal citation and quotation marks omitted))). *Ex parte Young* thus allows suit to be brought against a state officer in federal court for the purpose of enforcing the Supremacy Clause to the Constitution if the following criteria are met: (1) the plaintiff has pleaded his case against the state official responsible for enforcing the law at issue in that person's official capacity; (2) the plaintiff has alleged an ongoing violation of federal law, not state law, as federal courts may not instruct state officials on state law, thereby significantly intruding on state sovereignty and failing to enforce the Supremacy Clause; and (3) the plaintiff has requested the proper relief, that is, prospective, injunctive relief, or relief that is ancillary to prospective relief.

At the outset of this portion of the analysis, the Court notes that "since state law claims do not implicate federal rights or federal supremacy concerns, the [*Ex parte*] *Young* exception does not apply to state law claims brought against the state" and thus such claims are barred against state officials in their official capacities, as suits against the state itself. *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) and *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)). Therefore, the Eleventh Amendment bars Plaintiff's state law claims to the extent they are asserted against Barbour and Epps in their official capacities, and such claims shall be dismissed.[4] *See also Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

---

[4] However, "the Eleventh Amendment do[es] not deprive federal courts of jurisdiction over state law claims against state officials strictly in their individual capacities." *McKinley*, 643 F.3d at 406 n.10 (quoting *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1271 (5th Cir. 1992)). Thus, Plaintiff's state law claims against Epps in his individual capacity survive the motions presently before the Court based on the Eleventh Amendment. Because

Next, the Court notes that Plaintiff concedes that he has no viable Section 1983 or Section 1985 claim for monetary damages against Barbour and Epps in their official capacities. Thus, the Court finds that any Section 1983 or Section 1985 claims for monetary relief against Barbour and Epps in their official capacities shall be dismissed. The Court now turns to the remaining claims against Barbour and Epps in their official capacities—the Section 1983 and Section 1985 claims for declaratory relief.

Suit may be brought against a state official in certain situations where that suit seeks only prospective injunctive or declaratory relief in order to end a continuing violation of federal law. *Walker v. Livingston*, 381 F. App'x 477, 478 (5th Cir. 2010) (citing *Seminole Tribe of Fla.*, 517 U.S. at 73, 116 S. Ct. 1114). Barbour and Epps maintain that the *Ex parte Young* doctrine does not allow Plaintiff to seek declaratory relief under Section 1983 and Section 1985. Barbour and Epps contend that Plaintiff seeks federal declaratory relief for past conduct only, and not for prospective injunctive relief as is permitted by *Ex parte Young*. Plaintiff argues that under *Ex parte Young*, he may seek declaratory relief against Defendants on the Section 1983 and Section 1985 claims, as he maintains the relief he seeks is prospective in nature.[5]

As stated above, the Court's task in determining whether *Ex parte Young* allows Plaintiff's claim for declaratory relief against Barbour and Epps in their official capacities requires "a straightforward inquiry into whether [the] complaint alleges an ongoing violation of

---

Plaintiff strictly asserts claims against Barbour in his official capacity, all state law claims asserted against Barbour shall be dismissed.

[5] The Court notes with respect to Plaintiff's state law claims that *Ex parte Young* does not allow claims for injunctive relief requiring a state official to conform his conduct to state law. A plaintiff's state law claims "are not cognizable in a proceeding under *Ex parte Young* because state officials continue to be immunized from suit in federal court on alleged violations of state law brought under the federal courts' supplemental jurisdiction." *Earles v. State Bd. Of Certified Pub. Accountants of La.*, 139 F.3d 1033, 1039 (5th Cir. 1998); *see Pennhurst*, 465 U.S. at 103–21, 104 S. Ct. 900. Thus, to the extent, if any, that Plaintiff's state law claims are asserted against Epps in his individual capacity for injunctive relief, such relief is barred by the Eleventh Amendment.

federal law and seeks relief properly characterized as prospective." *See, e.g.*, *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 296, 117 S. Ct. 2028.

In looking to Plaintiff's amended complaint, the Court notes that Plaintiff's prayer for relief in his amended complaint includes a request for declaration from the Court that "Defendants' actions, as herein described, violated Plaintiff's constitutional rights under the Eighth, Thirteenth[,] and Fourteenth Amendments to the United States Constitution." Pl.'s Am. Compl. [12] at 15(b). Plaintiff's amended complaint specifically asserts that **(1)** Defendants violated Plaintiff's Thirteenth Amendment right to be free from slavery and/or involuntary servitude by forcefully detaining Plaintiff at the Restitution Center even after he had satisfied his restitution, as part of a conspiracy "to deprive, by force[,] intimidation[,] or threat, [Plaintiff] from receiving his freedom after he satisfied the terms of his sentencing," to "deny [Plaintiff] his civil rights," and "to intimidate him," *id.* ¶¶ 2, 3, 40, 59, 63, 66–70, 79–82; **(2)** Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment when they subjected Plaintiff and others to the inherently harmful conditions of a chicken plant wherein workers are forced to work sometimes "covered in chicken feces" and "in an environment filled with dust, feathers, and chicken feces," even if physically ill, and alongside illegal immigrants who may carry diseases such as TB and workers who may "urinat[e] close to the slaughter line," *id.* ¶¶ 15, 20, 24–26, 31, 52, 58, 62, 71–75; **(3)** Plaintiff has been denied his Fourteenth Amendment procedural and substantive due process rights as a result of Defendants' actions, *id.* ¶¶ 64, 76–78; and **(4)** Defendants violated Section 1983 by failing to adequately train and supervise their administration, staff, and/or faculty not to violate a resident's Eighth, Thirteenth, and Fourteenth Amendment rights, which was the proximate cause of Plaintiff's injuries, *id.* ¶¶ 53, 83–87. Plaintiff further asserts that the alleged actions of Defendants were all

taken as part of Defendants' policy, practice, or custom, and that Defendants violate the Eighth, Thirteenth, and Fourteenth Amendment rights of those residents entrusted to their care. *Id.* ¶¶ 44, 47–49. Although Plaintiff acknowledges that he is no longer a resident at the Restitution Center, he alleges that he continues to suffer from TB, which he contracted while he was a resident at the Restitution Center, and that his ongoing injuries resulted from the alleged constitutional deprivations. Plaintiff also consistently maintains throughout his amended complaint that the alleged actions taken against him are part of a continuing practice of Defendants. The Court finds that Plaintiff has alleged an ongoing constitutional violation against these Defendants in their official capacities to survive these Rule 12(b)(1) motions.

Having found that Plaintiff has alleged an ongoing constitutional violation, the Court now looks to whether the Plaintiff's amended complaint indicates that Plaintiff seeks prospective injunctive relief permitted by *Ex parte Young*. Although Plaintiff includes in his responses a request for an injunction ordering any future behavior by these Defendants to be consistent with the United States Constitution, such a request does not appear in the amended complaint, and thus such a request is not properly before the Court. Plaintiff's requested declaratory relief in the amended complaint is only that this Court declare that these Defendants' acts have violated his constitutional rights.

"The Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, permits a federal court to declare the rights of a party whether or not further relief is or could be sought, and [the Supreme Court has] held that under this Act declaratory relief may be available even though an injunction is not." *Green v. Mansour*, 474 U.S. 64, 72, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985) (citing *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974)). The declaratory relief sought by Plaintiff in the case *sub judice* is a declaration of unconstitutionality

wherein even if the Court were to declare a defendant's actions unconstitutional, the State could then decide how to remedy the wrong. The Court notes that case law provides little guidance on this particular issue, but the Court found instructive former United States Supreme Court Justice Rehnquist's often-cited concurrence in *Steffel*, wherein Justice Rehnquist wrote that he believed that the Declaratory Judgment Act intended the declaratory judgment to remain "a simple declaration of rights without more," and that allowing such a remedy ensures that "[a]ll . . . possible avenues of relief would be reached voluntarily by the States and would be completely consistent with the concepts of federalism . . . ." *See Steffel*, 415 U.S. at 484, 94 S. Ct. 1209 (Rehnquist, J., concurring). The Court finds that the Eleventh Amendment does not bar Plaintiff from bringing a claim for declaratory judgment against Barbour and Epps in their official capacities that Plaintiff's constitutional rights have been violated, and thus, these claims survive the Rule 12(b)(1) motions. The Court notes, however, that it will freely entertain this issue again at a later stage of the case.

Finally, the Court addresses Plaintiff's argument that *Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890), improperly expanded the Eleventh Amendment's conveyance of sovereign immunity to non-diversity lawsuits. Although the Court understands and appreciates the various schools of thought with respect to interpretation of the Eleventh Amendment, this Court is bound by the precedent of the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit. The United States Supreme Court recently explained in *Alden v. Maine* that "the scope of the States' immunity from suit is demarcated not by the text of the Amendment alone but by fundamental postulates implicit in the constitutional design." 527 U.S. at 729, 119 S. Ct. 2240. In *Alden*, the Supreme Court quoted a previous opinion of the Supreme Court: "Although the text of the Amendment would appear to restrict

only the Article III diversity jurisdiction of the federal courts, 'we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition . . . which it confirms.' " *Id.*, 119 S. Ct. 2240 (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779, 111 S. Ct. 2578, 115 L. Ed. 2d 686 (1991)). Similarly, the Fifth Circuit has conceded: "Though the amendment's text most reasonably applies only to suits in diversity, the Supreme Court has consistently looked to the principle underlying the amendment to bar suits on federal causes of action as well." *AT&T Commc'ns v. BellSouth Telecommunications Inc.*, 238 F.3d 636, 649–50 (5th Cir. 2001). For these reasons, the Court finds that Plaintiff's argument with respect to *Hans v. Louisiana*—although creative—is unavailing.

### E. Conclusion

In sum, the Court finds that McTeer and Bradley's motion to dismiss **[16]** is **DENIED**, as the Court does not find at this juncture that McTeer and Bradley are arms of the State subject to sovereign immunity.

The Court further finds that Barbour's motion to dismiss **[35]** is **GRANTED IN PART AND DENIED IN PART**; Barbour's motion to dismiss [35] is **GRANTED** insofar as the motion concerns the state law claims against Barbour, the Section 1983 claims for monetary damages against Barbour, and the Section 1985 claims for monetary damages against Barbour; the state law claims against Barbour, the Section 1983 claims for monetary damages against Barbour, and the Section 1985 claims for monetary damages against Barbour are **DISMISSED**; and Barbour's motion to dismiss [35] is **DENIED** insofar as it concerns Plaintiff's claim for declaratory relief that Barbour has violated Plaintiff's constitutional rights.

Finally, the Court finds that Epps' motion to dismiss **[37]** is **GRANTED IN PART AND DENIED IN PART**; Epps' motion to dismiss [37] is **GRANTED** insofar as the motion concerns

the state law claims against Epps in his official capacity, the Section 1983 claims for monetary damages against Epps in his official capacity, and the Section 1985 claims for monetary damages against Epps in his official capacity; the state law claims against Epps in his official capacity, the Section 1983 claims for monetary damages against Epps in his official capacity, and the Section 1985 claims for monetary damages against Epps in his official capacity are **DISMISSED**; and Epps' motion to dismiss [37] is **DENIED** insofar as it concerns Plaintiff's claim for declaratory relief that Epps in his official capacity has violated Plaintiff's constitutional rights.

All individual capacity claims against Epps, McTeer, and Bradley survive these motions to dismiss **[16, 35, and 37]**, which were brought on Eleventh Amendment immunity grounds and not qualified immunity grounds.

The stay is **LIFTED.**

A separate order in accordance with this opinion shall issue this day.

**THIS,** the ____ day of September, 2013.

_____
SENIOR JUDGE