IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MARVIN JONES                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 4:10-CV-00011-GHD-JMV

TYSON FOODS, INC.; HALEY BARBOUR,
in His Official Capacity of Governor of the State
of Mississippi; CHRISTOPHER EPPS, in His Individual
and Official Capacities as Commissioner of the Mississippi
Department of Corrections; LEE McTEER, in His Official
Capacity as Community Correctional Director for Region I and
in His Individual Capacity; JONATHAN BRADLEY, in His
Official Capacity as Correctional Supervisor of Leflore County
Restitution Center and in His Individual Capacities             DEFENDANTS

## MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT TYSON FOODS, INC.'S MOTION TO DISMISS

Presently before the Court is Defendant Tyson Foods, Inc.'s motion to dismiss [18] filed

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Upon due consideration, the

Court finds that the motion should be granted in part and denied in part.[1]

### A. Factual and Procedural Background

Plaintiff Marvin Jones ("Plaintiff"), a former resident of Leflore County Restitution

Center, brings this suit for monetary and declaratory relief, alleging that his constitutional rights

were violated when he was subjected to dangerous conditions and contracted mycobacterium

tuberculosis ("TB") while fulfilling the terms of his restitution at a chicken-processing plant,

Tyson Foods, Inc., in Carthage, Mississippi ("Tyson"). Plaintiff sues Tyson; Haley Barbour, in

his official capacity as the then-Governor of Mississippi ("Barbour"); Christopher Epps, in his

individual capacity and official capacity as the Commissioner of the Mississippi Department of

---

[1] The Court finds that Plaintiff's request for hearing or oral argument on Tyson's motion to dismiss is not well taken, as the Court finds that a hearing or oral argument is not necessary to a ruling on the present motion.

Corrections ("Epps"); Lee McTeer, in his individual capacity and official capacity as the Community Correctional Director for Region I ("McTeer"); and Jonathon Bradley,[2] in his individual capacity and official capacity as the Correctional Supervisor of Leflore County Restitution Center ("Bradley").

Plaintiff alleges the following facts: After serving a three-month term at the Clay County Jail for embezzling money from a Dollar General store, Plaintiff was assigned to Leflore County Restitution Center. Bradley immediately assigned Plaintiff to work at the Tyson Foods chicken plant in Carthage, Mississippi, as a chicken hanger, a position which required Plaintiff to "hang[ ] live chickens on a moving wire by their feet in an environment filled with dust, feathers, and chicken feces." Pl.'s Am. Compl. [12] ¶ 20. Despite knowledge of the physical danger of exposure to TB, Defendants failed to test Plaintiff monthly for TB. *Id.* ¶ 39. Plaintiff began to suffer swelling in his face, neck, and hands. *Id.* ¶ 32. Plaintiff asked his work supervisor if he could see the company's nurse, but the supervisor would not allow him to do so. *Id.* After two weeks at Tyson, Plaintiff could no longer fulfill his work obligations due to his medical ailments; thus, Plaintiff returned to Leflore County Restitution Center, where he awaited his next assignment. *Id.* ¶ 33. Bradley became angry towards Plaintiff "because [Plaintiff] could not fulfill his duties" at Tyson, and Bradley did not assign Plaintiff to work at any other facility for two months, during which time Plaintiff was "essentially left in limbo." *Id.* ¶ 34. Bradley then assigned Plaintiff to work at Tyson again, "contrary to [Plaintiff's] best interest and despite the fact [that] he had a medical condition hampering his productivity at [Tyson]." *Id.* ¶ 37. "Despite earning the money to satisfy his restitution and any other legitimate outstanding debt, [Plaintiff], against his will, was forced to remain at [Leflore County Restitution Center] while at [Tyson]."

---

[2] It appears that the correct spelling of Defendant Bradley's first name is "Jonathon" and not "Jonathan" as stated in the case caption. The Court will use the corrected spelling in this opinion and corresponding Order.

*Id.* ¶ 40. Plaintiff was then released from Leflore County Restitution Center and allowed to return home. *Id.* ¶ 41. After his release, Plaintiff received a letter from the Mississippi State Department of Health informing him that he may have been exposed to TB during his assignment at Tyson. *Id.* ¶¶ 42, 65. After undergoing a tuberculin skin test, Plaintiff learned that he did, in fact, have TB. *Id.* ¶ 42. As a result of the disease, Plaintiff suffers from "muscle spasms, acute fever, night sweats, loss of appetite, weight loss, and a host of side effects from medications he must take" and is "unable to work." *Id.* ¶ 43.

Plaintiff assert the following causes of action against Tyson: **(1)** under 42 U.S.C. § 1983, Plaintiff's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment were violated by Tyson and other Defendants; **(2)** under 42 U.S.C. § 1983, Defendants failed to provide adequate training and/or supervise their administration, staff, and/or faculty not to violate Plaintiff's and other residents' Eighth, Thirteenth, and Fourteenth Amendment rights; **(3)** "Defendants conspired to deprive, by force, intimidation, or threat, [Plaintiff] from receiving his freedom after he satisfied the terms of his sentencing" in violation of 42 U.S.C. § 1985, *id.* ¶ 2; **(4)** Defendants were negligent and/or grossly negligent in providing an unsanitary work environment for Plaintiff, thus causing him harm that was foreseeable; **(5)** Tyson committed the tort of battery against Plaintiff under Mississippi law; and **(6)** Plaintiff suffered the tort of intentional infliction of emotional distress under Mississippi law due to Tyson's actions.

In lieu of answering the amended complaint [12], Tyson filed this motion to dismiss [18] asserting the defenses that Plaintiff's claims are barred by the exclusive remedy provision of the Mississippi Workers' Compensation Law (the "MWCL"), Mississippi Code § 71-3-1 *et seq.*; the state law claims for battery and intentional infliction of emotional distress are barred by the

3

applicable statutes of limitations; and otherwise asserting that Plaintiff's claims must be dismissed due to failure to state a claim under Rule 12(b)(6).

### B. Rule 12(b)(6) Standard

Motions to dismiss pursuant to Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371, 373 (5th Cir. 2012) (citing *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "Under the Rule 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, No. 12–30617, 2013 WL 1490654, *2 (5th Cir. Apr. 12, 2013) (per curiam) (quoting *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). "[A] complaint need not pin plaintiff's claim for relief to a precise legal theory.    However,

4

"[t]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. In a Rule 12(b)(6) determination, the court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible. *Lone Star Fund*, 594 F.3d at 387 (citing *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937).

### C. Analysis and Discussion

Tyson maintains that Plaintiff's amended complaint fails to state a claim upon which relief can be granted and argues in support of its position that **(1)** the exclusive remedy provision of the MWCL, Mississippi Code § 71-3-9, bars Plaintiff's claims against Tyson; **(2)** Plaintiff fails to plead a claim for negligence or gross negligence that would satisfy the Rule 12(b)(6) pleading standard; **(3)** Plaintiff fails to plead claims for battery and intentional infliction of emotional distress that would satisfy the Rule 12(b)(6) pleading standard, and/or that fall within the applicable statutes of limitations; **(4)** Plaintiff fails to satisfy the heightened pleading standard necessary to bring a claim under 42 U.S.C. § 1983; and **(5)** Plaintiff fails to satisfy the heightened pleading standard necessary to bring a claim under 42 U.S.C. § 1985(3). The Court addresses the grounds for dismissal as follows:

#### (1) Mississippi Workers' Compensation Law

First, Tyson argues that Plaintiff's claims are precluded by the exclusive remedy provision of the MWCL, Mississippi Code § 71-3-9, because Plaintiff was an employee of Tyson for purposes of the MWCL. Plaintiff contends that none of his claims are precluded by the MWCL, because he was not an employee of Tyson for purposes of the MWCL.

Under the MWCL, "[c]ompensation shall be payable for disability . . . of an employee from injury or occupational disease arising out of and in the course of employment, without

5

regard to fault as to the cause of the injury or occupational disease." MISS. CODE ANN. § 71-3-7(1). The MWCL further provides that

> [t]he liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee . . . on account of such injury . . . , except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee . . . may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury . . . .

MISS. CODE ANN. § 71-3-9. The Mississippi Supreme Court has held that in order to avoid the exclusivity of the MWCL, two elements must be met:

> (1) the injury must be caused by the willful act of the employer or another employee acting in the course of employment and in the furtherance of the employer's business, and

> (2) the injury must be one that is not compensable under the [MWCL].

*Griffin v. Futorian Corp.*, 533 So. 2d 461, 463 (Miss. 1988) (citing *Miller v. McRae's Inc.*, 444 So. 2d 368, 371–72 (Miss. 1984)). The MWCL bars claims that an employer's conduct was "reckless, negligent, or grossly negligent," *Peaster v. David New Drilling Co.*, 642 So. 2d 344, 349 (Miss. 1994), and that "the employer's conduct leading to the injury . . . included such elements as knowingly permitting hazardous conditions to exist or willfully failing to furnish a safe place to work or knowingly ordering the employee to perform a dangerous job," *id.* at 347–48 (citing DUNN, MISSISSIPPI WORKMEN'S COMPENSATION, (3d ed. 1982 & Supp. 1984). "[P]roof of an intentional tort is required to circumvent exclusive remedies available under workers' compensation law[.]" *Winters v. Cooper Lighting, Inc.*, No. 5:00–CV–(BR)(S), 2001 WL 1334197, *1 (S.D. Miss. July 6, 2001); *see Disney v. Horton*, No. CIV. A. 2:99–CV–0138, 2000 WL 490848, *8 (N.D. Miss. Apr. 14, 2000) ("Mississippi cases which have considered the viability of a negligence claim in the employer/employee context refused to allow such an

action."); *Allen v. NPC Int'l, Inc.*, No. 1:95CV20–B–D, 1996 WL 407564, *5 (N.D. Miss., June 10, 1996) ("[A]ny state tort claim grounded in negligence asserted by the plaintiff would be barred by the exclusive remedy provision of the [MWCL]."). However, "[o]bviously, if the injury is not compensable under the [MWCL], the [MWCL] does not provide the exclusive remedy." *Whitmire v. Victus Ltd.*, No. 1:97CV321BA, 2000 WL 33909236, *1 n.3 (N.D. Miss. Sept. 22, 2000) (quoting *Miller*, 444 So. 2d at 372).

Tyson maintains that the substance of Plaintiff's allegations indicate that Plaintiff was a consensual employee of Tyson, as the requirements of participation in the restitution program are that the individual be employable and have a desire to participate in the restitution program. Tyson further argues that Plaintiff's entry into the Leflore County Restitution Center was the product of a voluntary plea agreement. Tyson contends that Plaintiff fails to allege that he had the right to control any aspect of the job at Tyson and that he furnished any of his own equipment for the job. Instead, Tyson maintains that Plaintiff's allegations demonstrate that Tyson controlled all aspects of Plaintiff's job at Tyson, including his duties as chicken hanger and whether or not Plaintiff could seek medical attention for his physical ailments on the job. Tyson also maintains that the letter Plaintiff received from the Mississippi Department of Health referred to Plaintiff as an employee of Tyson. Tyson argues that in order to escape the exclusive remedy provision of the MWCL, Plaintiff would have had to plead specific factual allegations that Tyson, as the employer, had the requisite intent to injure Plaintiff as an employee of Tyson, and further that Tyson's actions or inactions were designed to bring about the injury complained of. Instead, Tyson argues that at best, Plaintiff's allegations plead negligence or gross negligence—neither of which rise to the level of "intent to injure" which is necessary to avoid the exclusive remedy bar of the MWCL.

7

Plaintiff argues in response that the MWCL does not preclude his claims because he was not a voluntary employee of Tyson but was instead an individual under court order to complete a restitution program who was assigned to Tyson. Plaintiff maintains that there was no mutual consent in this case: Plaintiff had no choice where he worked to satisfy his restitution and worked where he was assigned to work. Plaintiff also maintains that the fact that he received wages from Tyson for his work does not demonstrate that Plaintiff was an employee of Tyson for purposes of the MWCL. Finally, Plaintiff contends that despite Tyson's knowledge of TB infection at its plant and Plaintiff's subsequent diagnosis of TB, Tyson never offered Plaintiff workers' compensation benefits of any kind.

The Court finds Tyson's argument that Plaintiff was an employee of Tyson to be persuasive; arguably, Plaintiff's work at Tyson was so defined and controlled by Tyson that an employer-employee relationship was established. However, the Court cannot ignore that Plaintiff was a resident of the Leflore County Restitution Center only assigned to work at Tyson to pay his court-ordered restitution. Perhaps, as Tyson suggests, the fact that Plaintiff was a resident of the Leflore County Restitution Center does not mean he was not an employee of Tyson; however, this Court cannot determine this matter from the pleadings. In the opinion of the Court, it is vital to know whether Plaintiff was qualified to collect workers' compensation benefits while he worked at Tyson. Because this is not a matter that can be determined from the face of the pleadings, Tyson's Rule 12(b)(6) motion to dismiss is denied on this ground.

### (2) Negligence and Gross Negligence Claims

Tyson further argues that Plaintiff fails to plead essential elements of negligence and gross negligence in his amended complaint, and in so doing, fails to state a viable claim for either negligence or gross negligence. Specifically, Tyson maintains that Plaintiff has failed to

specify in his pleadings that Tyson had a duty to Plaintiff, breached this duty, and that the breach of such duty proximately caused Plaintiff's injuries. Tyson further contends that Plaintiff also fails to allege how any wrongdoing by Tyson caused Plaintiff to contract TB while working at Tyson. Finally, Tyson maintains that Plaintiff's allegations that Tyson was negligent and/or grossly negligent are conclusory and speculative and do not rise to the Rule 12(b)(6) pleading standard.

Plaintiff maintains that he has sufficiently pled claims for negligence and gross negligence to satisfy the Rule 12(b)(6) standard. Plaintiff additionally maintains that the letter he received from the Mississippi Department of Health stating that during his time working at Tyson he could have been exposed to an individual with TB, as well as various news clippings concerning Tyson's controversial practices in the poultry industry, which Plaintiff has attached to his amended complaint, demonstrate that his negligence and gross negligence claims rise above the speculative level and survive the Rule 12(b)(6) pleading standard. Plaintiff argues that Tyson forced him to work in an unsanitary work environment and exhibited knowing and willful disregard of Plaintiff's and others' health.

In looking to the face of Plaintiff's amended complaint, the Court finds that Plaintiff asserts the following with respect to his negligence and gross negligence claims: Plaintiff was "arbitrarily assigned to [Tyson] by [Bradley]" to pay his restitution while at Leflore County Restitution Center, Pl.'s Am. Compl. [12] ¶ 15; Plaintiff assumed the duties of a chicken hanger at Tyson, which "included, but were not limited to, hanging live chickens on a moving wire by their feet, in an environment filled with dust, feathers, and chicken feces, *id.* ¶ 20; "[Tyson] created an unsanitary and unhealthy work environment" wherein "[Plaintiff] had to conduct his work among chickens compelled to release feces due to the nature in which [Tyson] was

processing the poultry" and "[Plaintiff] would, at times, be covered in chicken feces," *id.* ¶ 24; Tyson was negligent and grossly negligent "in providing a sanitary work environment for [Plaintiff], thus causing him harm," and "[i]t was foreseeable that [Tyson's] negligent behavior would cause [Plaintiff] harm," *id.* ¶¶ 90–91, 93–94; Plaintiff contracted TB "while he was fulfilling the terms of his restitution" at Tyson, *id.* ¶ 15, and Tyson "[was] aware, or should have been aware, of the very dangers [Plaintiff] was facing," *id.* ¶ 30; "[a]s a result of being forced to fulfill his criminal sanctions in this environment, [Plaintiff's] face, neck, and hands began to swell soon after his time at [Tyson] began," *id.* ¶ 32; Plaintiff "spoke with a supervisor at Tyson about these medical ailments, and requested to see the company's nurse," but "[t]he supervisor refused to allow him to go to the nurse's station," *id.*; after two weeks at Tyson, Plaintiff could no longer work at Tyson due to "the medical ailments that developed while at [Tyson] and the problematic work environment," *id.* ¶ 33; and after a few months of working as a groundskeeper at Greenwood Country Club in Plaintiff's subsequent work assignment from Bradley, Bradley assigned him to work at Tyson again—despite his best interest and medical condition hampering his productivity at Tyson, *id.* ¶ 37.

It appears to the Court that Plaintiff alleges that Tyson had a duty to provide a safe, sanitary work environment free from serious health risks and failed to do so, and that Tyson's failure to provide a safe, sanitary work environment was a proximate cause of Plaintiff's injuries, including contracting TB. The Court finds that Plaintiff has stated a claim for negligence and gross negligence sufficient to withstand the Rule 12(b)(6) standard.

### (3) Battery Claim

Tyson further argues that Plaintiff fails to state a viable claim for battery under Mississippi law. Alternatively, Tyson argues that the battery claim was not timely pled within

the applicable statute of limitations. Because the Court finds that the claim for battery is barred by the applicable statute of limitations, the Court need not reach Tyson's argument that Plaintiff has failed to state a claim for battery.

"All actions for . . . battery . . . shall be commenced within one (1) year after the cause of such action accrued, and not after." MISS. CODE ANN. § 15-1-35. The discovery rule delays accrual of actions "which involve latent injury or disease . . . until the plaintiff has discovered, or by reasonable diligence should have discovered the injury." MISS. CODE ANN. § 15-1-49(2). However, the discovery rule only applies "[i]n actions for which no other period of limitation is prescribed." *Id.* Because a one-year statute of limitations is prescribed for battery, the discovery rule does not apply to Plaintiff's battery claim. Thus, to be timely filed, Plaintiff's battery claim must have been commenced within one year after the cause of his action accrued. "[A] cause of action involving an intentional tort begins to run from the time the individual is injured and not its discovery unless the running of the limitations period is tolled by" fraudulent concealment of the cause of action. *Goleman v. Orgler*, 771 So. 2d 374, 377 (¶ 9) (Miss. Ct. App. 2000). Fraudulent concealment tolls the limitations period until the claim is discovered or should have been discovered. MISS.CODE ANN. § 15-1-67 (Rev. 2003). "In order to establish fraudulent concealment, the plaintiff must prove that (1) the defendants engaged in some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of a claim, and (2) though plaintiffs acted with due diligence in attempting to discover the claim, they were unable to do so." *Doe v. Roman Catholic Diocese of Jackson*, 947 So. 2d 983, 986–87 (¶ 9) (Miss. Ct. App. 2006) (citing *Robinson v. Cobb*, 763 So. 2d 883, 887 (¶ 19) (Miss. 2003)). Plaintiff has not alleged any facts supporting fraudulent concealment. Thus, the Court must look to the face of

the pleadings to determine whether Plaintiff brought his claim for battery within one year of the time Plaintiff was allegedly injured.

The Court finds from the face of the pleadings that Plaintiff alleges that he contracted TB during his time working at Tyson. Pl.'s Am. Compl. [12] ¶ 15. Plaintiff alleges he worked at Tyson for two weeks during the month of October 2007, *id.* ¶ 33, as well as the months of March through July of 2008, *id.* ¶¶ 37, 41. On February 8, 2010, Plaintiff filed his initial complaint— approximately one year and six months after he left his employment at Tyson. Thus, Plaintiff's battery claim is untimely pled and must be dismissed as barred by the applicable statute of limitations.

### (4) Intentional Infliction of Emotional Distress Claim

Tyson further argues that Plaintiff fails to state a viable claim for intentional infliction of emotional distress under Mississippi law, or alternatively, that Plaintiff's intentional infliction of emotional distress claim was not timely pled within the applicable statute of limitations. Because the Court finds that Plaintiff's allegations of intentional infliction of emotional distress fail to state a claim against Tyson, the Court does not reach Tyson's statute of limitations argument.

Plaintiff alleges that he contracted TB "because of the intentional actions of [Tyson] to injure him," Pl.'s Am. Compl. [12] ¶ 100, and that Tyson's "creation and maint[enance] of an unsanitary work environment" constituted intentional infliction of emotional distress, *id.* ¶¶ 101– 02. The Mississippi Supreme Court recently set forth the requirements of an intentional infliction of emotional distress claim under Mississippi law:

> Under Mississippi law, a plaintiff may recover under a theory of intentional infliction of emotional distress "[w]here there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally . . . even though there has been no physical injury. In such instances, it is the nature of the act

itself—as opposed to the seriousness of the consequences—which gives impetus to legal redress . . . . " *Sears, Roebuck & Co. v. Devers*, 405 So. 2d 898, 902 (Miss. 1981), *overruled on other grounds by Adams v. U.S. Homecrafters, Inc.*, 744 So. 2d 736 (Miss. 1999). In other words, the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d. (1965)). Accordingly, the plaintiff[ ] must have alleged that the conduct that caused their emotional distress was "so outrageous in character, and so extreme in degree," that they might recover under a theory of intentional infliction of emotional distress and survive a motion to dismiss.

*Bowden v. Young*, __ So. 3d ___, 2013 WL 4759584, *8, ¶ 25 (Miss. Sept. 5, 2013); *accord King v. Newton Cnty. Bd. of Supervisors*, 144 F. App'x 381, 385, 2005 WL 1750102, *3 (5th Cir. 2005) (per curiam) (citation omitted) ("Under Mississippi law, to create liability for intentional infliction of emotional distress, the complained-of conduct 'must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' ").

Taking Plaintiff's allegations on the face of his amended complaint as true, the Court finds that Plaintiff has failed to state a viable claim for intentional infliction of emotional distress. There is nothing in Plaintiff's allegations to support that Tyson intentionally acted in such a way that would evoke outrage or revulsion by allegedly subjecting Plaintiff to an unsanitary work environment or by denying his request to see a medical professional for his physical ailments. Conduct that rises to the level of "nervewracking, upsetting, and even improper" is not enough to reach the level of extreme and outrageous conduct required for recovery for intentional infliction of emotional distress. *Jenkins v. City of Grenada*, 813 F. Supp. 443, 447 (N.D. Miss. 1993) (citing *Johnson v. Merrell Dow Pharms., Inc.*, 965 F.2d 31, 34 (5th Cir. 1992)).

The Court finds that from the face of the pleadings, Plaintiff has demonstrated that the alleged acts of placing him in an unsanitary work environment filled with dust, live chickens hanging from wires, and chicken feces, as well as alongside employees who could have had TB, and denying his request to see a medical professional for his physical ailments, were perhaps negligent, and perhaps even grossly negligent. However, the Court cannot find that the alleged facts rise to the level of extremity and outrageousness required to sustain a claim of intentional infliction of emotional distress under Mississippi law. Thus, the Court finds that the Plaintiff's intentional infliction of emotional distress claim must be dismissed for failure to state a claim.

### (5) Section 1983 Claims

Next, Tyson argues that Plaintiff's allegations fail to state a viable Section 1983 claim. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under [Section] 1983, a plaintiff must [1] allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (citing cases).

With respect to the first prong, the Fifth Circuit has recognized that a plaintiff is required to assert "claims of specific conduct and actions giving rise to a Constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996) (emphasis added). Plaintiff's amended complaint asserts under Section 1983 that (1) Defendants violated Plaintiff's Thirteenth Amendment right

14

to be free from slavery and/or involuntary servitude by forcefully detaining Plaintiff at Leflore County Restitution Center even after he had satisfied his restitution, as part of a conspiracy "to deprive, by force[,] intimidation[,] or threat, [Plaintiff] from receiving his freedom after he satisfied the terms of his sentencing," to "deny [Plaintiff] his civil rights," and "to intimidate him," Pl.'s Am. Compl. [12] ¶¶ 2, 3, 40, 59, 63, 66–70, 79–82; **(2)** Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment when they subjected Plaintiff and others to the inherently harmful conditions of a chicken plant wherein workers are forced to work sometimes "covered in chicken feces" and "in an environment filled with dust, feathers, and chicken feces," even if physically ill, and alongside illegal immigrants who may carry diseases such as TB and workers who may "urinat[e] close to the slaughter line," *id.* ¶¶ 15, 20, 24–26, 31, 52, 58, 62, 71–75; **(3)** Plaintiff has been denied his Fourteenth Amendment procedural and substantive due process rights as a result of Defendants' actions, *id.* ¶¶ 64, 76–78; and **(4)** Defendants failed to adequately train and supervise their administration, staff, and/or faculty not to violate a resident's Eighth, Thirteenth, and Fourteenth Amendment rights, which was the proximate cause of Plaintiff's injuries, *id.* ¶¶ 53, 83–87.

The Court finds that Plaintiff has pled no facts supporting that Tyson had any part in forcefully detaining Plaintiff in Leflore County Restitution Center after he completed his restitution in violation of the Thirteenth Amendment; Plaintiff's allegations in this respect are conclusory and speculative in nature and fail to set forth specific conduct and actions giving rise to a Thirteenth Amendment violation by Tyson. Therefore, Plaintiff has failed to state a claim that Tyson violated his Thirteenth Amendment rights under Section 1983.

The Court further finds that Plaintiff's allegations that Tyson's actions caused him to suffer Fourteenth Amendment procedural and substantive due process rights are similarly

15

conclusory and speculative and fail to set forth specific conduct and actions giving rise to a Fourteenth Amendment violation by Tyson. Therefore, Plaintiff has similarly failed to state a claim that Tyson violated his Fourteenth Amendment due process rights under Section 1983.

However, the Court finds that Plaintiff has alleged an Eighth Amendment and Fourteenth Amendment deprivation of his right to be free from cruel and unusual punishment. The Fifth Circuit has held that in an Eighth Amendment case against prison officials the plaintiff was required to "raise a fact issue as to whether prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *See Cooper v. Johnson*, 353 F. App'x 965, 968 (5th Cir. 2009) (per curiam) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). In the case *sub judice*, the Court finds that Plaintiff has raised a fact issue as to whether Tyson subjected him to an unsafe, unsanitary work environment and whether his request to see a medical professional was refused by Tyson with wanton disregard for Plaintiff's serious medical needs. Because the Court finds that Plaintiff's amended complaint sets forth allegations of specific conduct and actions giving rise to Eighth and Fourteenth Amendment violations of Plaintiff's right to be free from cruel and unusual punishment by subjecting Plaintiff to unsanitary workplace conditions and by denying Plaintiff's request to seek medical attention for his physical ailments on the job, the first prong of Section 1983 is satisfied. The Court thus turns to whether Plaintiff has satisfied the second prong of Section 1983, that is, whether he has adequately alleged that Tyson acted under color of state law.

With respect to the second prong, "a plaintiff must allege facts tending to show that the defendant has acted under color of state law." *Webb v. Morella*, 2013 WL 1490654, *2 (quoting *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003) (internal

quotation marks omitted)). "The under-color-of-state-law element of [Section] 1983 excludes

from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* (quoting

*Richard*, 355 F.3d at 352 (internal alterations omitted) (in turn quoting *Am. Mfrs. Mut. Ins. Co. v.*

*Sullivan*, 526 U.S. 40, 50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999))). The Fifth Circuit has

explained the various tests used by the United States Supreme Court in determining whether a

plaintiff has sufficiently pled that a defendant acted under color of state law:

> The "public function test" examines whether the private entity
> performs a function which is "exclusively reserved to the State."
> *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 158, 98 S. Ct. 1729,
> 56 L. Ed. 2d 185 (1978). Under the "state compulsion test," a
> private actor's conduct is attributable to the State when it exerts
> coercive power over the private entity or provides significant
> encouragement. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144,
> 170–71, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). The "nexus" or
> "state action test" considers whether the State has inserted "itself
> into a position of interdependence with the [private actor, such]
> that it was a joint participant in the enterprise." *Jackson v. Metro.*
> *Edison Co.*, 419 U.S. 345, 357–58, 95 S. Ct. 449, 42 L. Ed. 2d 477
> (1974); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937,
> 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). And, under the "joint
> action test," private actors will be considered state actors where
> they are "willful participant[s] in joint action with the State or its
> agents." *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S. Ct. 183, 66 L.
> Ed. 2d 185 (1980).

*Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549–50 (5th Cir. 2005). The United States

Supreme Court has not resolved "[w]hether these different tests are actually different in

operation or simply different ways of characterizing [this] necessarily fact-bound inquiry."

*Lugar*, 457 U.S. at 939, 102 S. Ct. 2744. However, the Fifth Circuit explains in *Cornish* that the

inquiry "begins by identifying the specific conduct of which the plaintiff complains." 402 F.3d

at 550 (quoting *Sullivan*, 526 U.S. at 51, 119 S. Ct. 977 (quotation marks omitted)).

Stripping the Plaintiff's amended complaint down to its alleged facts, and discarding

those allegations concerning the now-dismissed Thirteenth Amendment indentured

servitude/slavery and Fourteenth Amendment due process violations claims, Plaintiff claims that Tyson and other Defendants conspired together to deprive Plaintiff of his Eighth and Fourteenth Amendment rights by subjecting Plaintiff and others to the inherently harmful conditions of a chicken plant and forcing him to work sometimes "covered in chicken feces" and "in an environment filled with dust, feathers, and chicken feces," even if physically ill, and alongside illegal immigrants who may have carried diseases such as TB and workers who may "urinat[e] close to the slaughter line," Pl.'s Am. Compl. [12] ¶¶ 15, 20, 24–26, 31, 52, 58, 62, 71–75; and failed to adequately train and supervise their employees not to violate Plaintiff's constitutional rights, *id.* ¶¶ 53, 83–87. Plaintiff alleges that Tyson had a relationship with the other Defendants, which include arms of the State, and acted "under the color and pretenses of the ordinances, policies, practices, customs, regulations, usages[,] and/or statutes of the Counties of Leflore and/or Leake, as well as the State of Mississippi," Pl.'s Am. Compl. [12] ¶ 44, "to suppress the constitutional and statutory rights of those residents entrusted to their care," *id.* ¶¶ 46–49, and that "[t]he unlawful actions of Defendants . . . were taken or ratified by final policy makers for [Leflore County Restitution Center] and thus constitute policies, practices[,] and usage sufficient to impose liability," *id.* ¶ 50. The question is whether Plaintiff's amended complaint sufficiently alleges that Tyson's conduct was fairly attributable to the State.

Tyson argues that because it is a private corporation, its alleged actions were not acts under color of state law, and, therefore, that Plaintiff fails to allege facts sufficient for an action under Section 1983. Tyson maintains that a private employer is not transformed into a state actor merely by employing a worker pursuant to a state-regulated statutory restitution program and that Plaintiff fails to allege state involvement to convert this private conduct into a state action.

18

Plaintiff contends that he has sufficiently pled that Tyson acted under color of state law by alleging that he was assigned by the State to fulfill his restitution at Tyson and by alleging the relationship between Tyson and the other Defendants. This appears to this Court to be an attempt to meet either the "nexus"/"state action test" or the "joint action test." As explained by the Fifth Circuit, the "nexus" or "state action test" considers whether the State has inserted "itself into a position of interdependence with the [private actor, such] that it was a joint participant in the enterprise." *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357–58, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974). The "joint action test" considers whether the entity was a "willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980).

In this respect, Plaintiff alleges that a conspiracy existed between Defendants under Section 1983. "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369–1370 (5th Cir. 1987) (footnote omitted). Whether or not a defendant acting alone caused a constitutional violation, liability can be imposed to that defendant as an alleged member in the conspiracy. *Latiolais v. Cravins*, 484 F. App'x 983, 990 (5th Cir. 2012) (per curiam) (citing *Hale v. Townley*, 45 F.3d 914, 920–21 (5th Cir. 1995)). To prove a conspiracy under Section 1983, a plaintiff must show: (1) "an agreement between private and public defendants to commit an illegal act," and (2) "an actual deprivation of constitutional rights." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).

On the facts as alleged in the complaint, Plaintiff alleges that Bradley "arbitrarily assigned" Plaintiff to Tyson. Pl.'s Am. Compl. [12] ¶ 15. Plaintiff further alleges that after two weeks of working at Tyson, Plaintiff could no longer fulfill his obligations at Tyson due to "the

19

medical ailments that developed at [Tyson] and the problematic work environment"; thus, Plaintiff "returned to [Leflore County Restitution Center] while he waited for his next assignment from [Bradley]." *Id.* ¶ 33. Plaintiff alleges that Leflore County Restitution Center and/or Bradley did not assign Plaintiff another job for two months, *id.* ¶ 34, and that this was because "[Plaintiff] angered [Bradley] because [Plaintiff] could not fulfill his duties at [Tyson], thus negatively impacting any and all personal benefits [Bradley] is believed to have received from [Tyson] as a result of Plaintiff's placement," *id.* ¶ 35. Plaintiff alleges that "[i]t was well known among residents at [Leflore County Restitution Center] that [Bradley] wanted as many of his residents as possible to be assigned to [Tyson], even when other opportunities were available." *Id.* After Plaintiff was assigned to work as a groundskeeper at Greenwood Country Club, Bradley then allegedly reassigned Plaintiff to work at Tyson in an "arbitrary and capricious" decision that "personally benefited [Bradley]." *Id.* ¶ 37.

The Court finds that Plaintiff has alleged that Tyson was a joint participant in a conspiracy under Section 1983 to deprive him of his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment, and that Plaintiff has alleged that such constitutional deprivations did occur. This claim thus survives Tyson's Rule 12(b)(6) motion to dismiss.

The Court finds that Plaintiff's amended complaint fails to state a viable claim against Tyson for failure to train or supervise under Section 1983. For a claim based on the defendant's failure to supervise or train, the plaintiff must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris County, Tex.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998) (internal quotation

marks omitted)). To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.' " *Id.* (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (internal quotation marks omitted)). Further, the plaintiff must specifically allege "how a particular training program is defective." *Id.* (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (internal quotation marks omitted)). Because Plaintiff's amended complaint is bereft of any such allegations, his failure to train and/or supervise claim under Section 1983 against Tyson shall be dismissed.

### (6) Section 1985(3) Claim

Finally, Plaintiff alleges a Section 1985(3) conspiracy claim. Tyson maintains that this claim fails because Plaintiff has not pled racial animus in his allegations pertaining to a conspiracy under Section 1985(3). The Court finds Tyson's argument in this respect is well taken. Plaintiff's Section 1985(3) conspiracy claim fails because nowhere in the amended complaint does Plaintiff plead that racial animus motivated Tyson's actions. *See Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996) ("essential to [a Section 1985(3) conspiracy] claim . . . is that the conspiracy be motivated by racial animus"); *see, e.g., Green v. State Bar of Tex.*, 27 F.3d 1083, 1088 n.8 (5th Cir. 1994); *Rayborn v. Miss. State Bd. of Dental Examiners*, 776 F.2d 530, 532 (5th Cir. 1985). Thus, Plaintiff's Section 1985(3) claim for conspiracy shall be dismissed for failure to state a claim.

### *D. Conclusion*

In sum, the Court finds that Tyson's Rule 12(b)(6) motion to dismiss [18] is **GRANTED IN PART AND DENIED IN PART**, as follows:

Tyson's Rule 12(b)(6) motion to dismiss [18] is **DENIED** with respect to Tyson's argument that the MWCL bars Plaintiff's claims. As the Court has stated above, the MWCL generally provides the sole avenue of relief for an injured employee; however, the Court cannot determine from the face of the pleadings whether Plaintiff was or was not an employee of Tyson as defined under the MWCL. Accordingly, Tyson's Rule 12(b)(6) motion to dismiss is **DENIED** on this ground.

Tyson's Rule 12(b)(6) motion to dismiss [18] is **DENIED** with respect to Plaintiff's claims for negligence and gross negligence, as these claims satisfy the Rule 12(b)(6) pleading standard. Thus, Plaintiff's claims for negligence and gross negligence are sustained.

Tyson's Rule 12(b)(6) motion to dismiss [18] is **GRANTED** with respect to Plaintiff's state law claim for battery, as the same is untimely pled. Thus, Plaintiff's state law claim for battery is **DISMISSED.**

Tyson's Rule 12(b)(6) motion to dismiss [18] is **GRANTED** with respect to Plaintiff's allegations concerning intentional infliction of emotional distress, as Plaintiff has failed to state a viable intentional infliction of emotional distress claim. Thus, Plaintiff's state law claim for intentional infliction of emotional distress is **DISMISSED.**

Plaintiff's allegations under 42 U.S.C. § 1983 that Tyson participated in a conspiracy with Defendants to deprive him of his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment are sustained. Plaintiff's other 42 U.S.C. § 1983 allegations pertaining to the Thirteenth Amendment, Fourteenth Amendment substantive and procedural due process rights, and a failure to train/supervise are **DISMISSED** for failure to state a claim.

22

Plaintiff's allegations concerning a conspiracy under 42 U.S.C. § 1985(3) are **DISMISSED** for failure to state a claim, as Plaintiff has failed to allege the necessary element of racial animus.

A separate order in accordance with this opinion shall issue this day.

THIS, the 11 day of September, 2013.

_____
SENIOR JUDGE