IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MARVIN JONES                                                              PLAINTIFF

v.                                            CIVIL ACTION NO. 4:10-CV-00011-GHD-JMV

TYSON FOODS, INC.; HALEY BARBOUR,
in His Official Capacity of Governor of the State
of Mississippi; CHRISTOPHER EPPS, in His Individual
and Official Capacities as Commissioner of the Mississippi
Department of Corrections; LEE McTEER, in His Official
Capacity as Community Correctional Director for Region I and
in His Individual Capacity; JONATHAN BRADLEY, in His
Official Capacity as Correctional Supervisor of Leflore County
Restitution Center and in His Individual Capacity               DEFENDANTS

## MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY FILED BY DEFENDANTS CHRISTOPHER EPPS, LEE McTEER, AND JONATHAN BRADLEY

Presently before the Court is a motion for summary judgment based on qualified immunity [48] jointly filed by Defendants Christopher Epps, Lee McTeer, and Jonathan Bradley in their individual capacities. Upon due consideration, the Court finds that the motion [48] should be granted in part and denied in part, as set forth below.

### A. Factual and Procedural Background

Plaintiff Marvin Jones ("Plaintiff"), a former resident of Leflore County Restitution Center, brings this suit for monetary and declaratory relief, alleging that his constitutional rights were violated when he was subjected to dangerous conditions and contracted mycobacterium tuberculosis ("TB") while fulfilling the terms of his restitution at a chicken-processing plant, Tyson Foods, Inc., in Carthage, Mississippi ("Tyson"). Plaintiff sues Tyson; Haley Barbour, in his official capacity as the then-Governor of Mississippi ("Barbour"); Christopher Epps, in his individual capacity and official capacity as the Commissioner of the Mississippi Department of

1

Corrections ("Epps"); Lee McTeer, in his individual capacity and official capacity as the Community Correctional Director for Region I ("McTeer"); and Jonathan Bradley, in his individual capacity and official capacity as the Correctional Supervisor of Leflore County Restitution Center ("Bradley").

The alleged facts are set out in some detail in this Court's two previous memorandum opinions in this case, *see* Mem. Ops. [57 and 59]; therefore, the Court incorporates the facts set out in those opinions into this opinion, and for background purposes merely summarizes Plaintiff's claims as follows: Plaintiff's amended complaint asserts under 42 U.S.C. § 1983 that **(1)** Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment when they subjected Plaintiff and others to the inherently harmful conditions of a chicken plant wherein workers were forced to work sometimes "covered in chicken feces" and "in an environment filled with dust, feathers, and chicken feces," even if physically ill, and alongside illegal immigrants who might carry diseases such as TB and workers who might "urinat[e] close to the slaughter line," Pl.'s Am. Compl. [12] ¶¶ 15, 20, 24–26, 31, 52, 58, 62, 71–75; **(2)** Defendants violated Plaintiff's Thirteenth Amendment right to be free from slavery and/or involuntary servitude by forcefully detaining Plaintiff at Leflore County Restitution Center even after he had satisfied his restitution, as part of a conspiracy "to deprive, by force[,] intimidation[,] or threat, [Plaintiff] from receiving his freedom after he satisfied the terms of his sentencing," to "deny [Plaintiff] his civil rights," and "to intimidate him," *id.* ¶¶ 2, 3, 40, 59, 63, 66–70, 79–82; **(3)** Defendants violated Plaintiff's Fourteenth Amendment due process rights by its actions, *id.* ¶¶ 64, 76–78; and **(4)** Defendants failed to adequately train and supervise their administration, staff, and/or faculty not to violate a resident's Eighth, Thirteenth, and Fourteenth Amendment rights, which was the proximate cause of Plaintiff's injuries, *id.* ¶¶ 53,

83–87. Plaintiff's amended complaint asserts under 42 U.S.C. § 1985 that "Defendants conspired to deprive, by force, intimidation, or threat, [Plaintiff] from receiving his freedom after he satisfied the terms of his sentencing." *Id.* ¶ 2. The amended complaint further asserts under state law that **(1)** Defendants were negligent and/or grossly negligent in providing an unsanitary work environment for Plaintiff, thus causing him foreseeable harm, *id.* ¶¶ 89–94; **(2)** Defendants committed the tort of battery against Plaintiff, *id.* ¶¶ 95–97; and **(3)** Defendants' conduct subjected Plaintiff to intentional infliction of emotional distress, *id.* ¶¶ 98–102. Plaintiff alleges that Defendants' actions were conducted "under the color and pretenses of the ordinances, policies, practices, customs, regulations, usages[,] and/or statutes of the Counties of Leflore and/or Leake, as well as the State of Mississippi." *Id.* ¶ 44. Plaintiff further alleges that it is the policy, practice, or custom of Defendants to suppress the constitutional and statutory rights of those residents entrusted to their care, *id.* ¶¶ 46–49, and that "[t]he unlawful actions of Defendants . . . were taken or ratified by final policy makers for [Leflore County Restitution Center] and thus constitute policies, practices[,] and usage sufficient to impose liability," *id.* ¶ 50. Plaintiff seeks declaratory relief that Defendants' alleged actions violated his Eighth, Thirteenth, and Fourteenth Amendment rights; nominal and actual damages for Defendants' alleged violations of his state and federal constitutional rights; compensatory and punitive damages against Defendants for the alleged state torts of negligence and gross negligence; and the costs of litigation, including attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

Defendants Barbour, Epps, McTeer, and Bradley previously filed motions to dismiss on Eleventh Amendment immunity grounds [16, 35, & 37]. Tyson subsequently filed a motion to dismiss [18] the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. On September 11, 2013, the Court entered a memorandum opinion [57] and

3

Order [56] ruling on the Eleventh Amendment motions to dismiss, sustaining all official-capacity claims against McTeer and Bradley and the official-capacity claims for declaratory relief brought against Barbour and Epps, but dismissing all other official-capacity claims against Barbour and Epps on Eleventh Amendment immunity grounds. That same day, the Court entered another memorandum opinion [59] and Order [58], sustaining certain claims against Tyson—negligence, gross negligence, and conspiracy under 42 U.S.C. § 1983 based on an alleged violation of Plaintiff's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment—but dismissing all other claims against Tyson.

On March 15, 2013, Defendants Epps, McTeer, and Bradley ("these Defendants") filed the present motion for summary judgment based on qualified immunity [48]. Plaintiff filed a response to the motion, and these Defendants filed a reply. The motion is now ripe for review, and the Court finds as follows.

### B. Qualified Immunity Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Where the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Gates v. Tex. Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). The plaintiff bears the burden of negating the defense and cannot rest on conclusory assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *See id.* at 262; *see also Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th

5

Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present absolute proof but must offer more than mere allegations).

In ruling on a motion for summary judgment on qualified immunity grounds, the Court must first determine whether the allegations in Plaintiff's amended complaint are sufficient to negate these Defendants' assertions of qualified immunity. *See Fleming v. Tunica County*, 497 F. App'x 381, 388 (5th Cir. 2012) (per curiam) (citing *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) and *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 995 (5th Cir. 1995)). "Negating qualified immunity 'demands more than bald allegations and conclusionary statements.' " *Id.* (quoting *Wicks*, 41 F.3d at 995). "[I]f the actions [that a defendant official] claims he took are different from those the [plaintiff] allege[s,] . . . then discovery may be necessary before [the official]'s motion for summary judgment on qualified immunity grounds can be resolved." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). However, Plaintiff "must allege facts specifically focusing on the conduct of [the individual defendants] which caused his injury." *See Fleming*, 497 F. App'x at 388. "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648.

### C. Analysis and Discussion

As a preliminary matter, the Court addresses Plaintiff's contention in his response that the Court should allow discovery prior to ruling on these Defendants' qualified immunity motion. The Court has freely allowed immunity-related discovery throughout this litigation; the only stay imposed on discovery was for discovery on the merits. *See* Order [22] at 1 ("all proceedings unrelated to the issue of immunity shall be stayed pending the court's ruling" on immunity

motions). Qualified immunity is "both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation. Provided it turns on an issue of law, a district-court order denying qualified immunity conclusively determines that the defendant must bear the burdens of discovery and is conceptually distinct from the merits of the plaintiff's claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 672, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal citations and quotation marks omitted). Thus, engaging in discovery on the merits is not necessary, nor is it proper, prior to a ruling on the present qualified immunity motion. In fact, the United States Supreme Court has stated: "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 106 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). For these reasons, the Court finds that it should rule on the present qualified immunity summary judgment motion at this time, but the Court will note if merits-discovery is needed to resolve certain issues presented in the motion.

The Court will now address these Defendants' qualified immunity arguments as they pertain to **(1)** the § 1983 claims and **(a)** these Defendants' alleged personal involvement in constitutional deprivations, **(b)** Eighth Amendment violation, **(c)** Thirteenth Amendment violation, **(d)** Fourteenth Amendment violation, and **(e)** these Defendants' alleged failure to train or supervise; **(2)** the § 1985(3) conspiracy claim; **(3)** the 42 U.S.C. § 1997e(e) prior physical injury issue; and **(4)** the state law claims.

### 1. Section 1983 Claims Against Epps, McTeer, and Bradley in Their Individual Capacities

These Defendants contend that they are qualifiedly immune from suit on the § 1983 claims. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, ___ U.S. ___, ___,

132 S. Ct. 1657, 1661, 182 L. Ed. 2d 662 (Apr. 17, 2012) (citing § 1983). "Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." *See id.*, 132 S. Ct. at 1661; *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).[1]

However, such state actors enjoy various protections from liability derived from the common law, such as absolute or qualified immunity. *See Filarsky*, 132 S. Ct. at 1660; *see also id.* at 1662 (it is well settled that "common law protections well grounded in history and reason had not been abrogated by covert inclusion in the general language of § 1983") (internal quotation marks and citations omitted). "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, —— U.S. ——, ——, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (June 4, 2012); *see Ashcroft v. al-Kidd*, 563 U.S. ——, ——, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011); *Murrell v. Chandler*, 277 F. App'x 341, 343 (5th Cir. 2008) (per curiam) (citing *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996)). Thus, in evaluating a claim of qualified immunity, courts consider (1) whether the plaintiff has alleged a violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Courts have discretion to determine which of these questions to address first. *Pearson*, 555 U.S. at 236, 129 S. Ct. 2151. And often deciding one of these questions obviates the need to decide the other; "[t]his approach comports with our usual

---

[1] In its memorandum opinion [57] and Order [56] ruling on the Eleventh Amendment immunity motions to dismiss, the Court found that McTeer and Bradley had not demonstrated at this juncture of the case that they were arms of the State subject to Eleventh Amendment immunity. This is immaterial to the qualified immunity analysis of the § 1983 claims against McTeer and Bradley in their individual capacities, as their alleged conduct was at least fairly attributable to the State.

reluctance to decide constitutional questions unnecessarily." *See Reichle*, 132 S. Ct. at 2093; *Pearson*, 555 U.S. at 241, 129 S. Ct. 808. *See also Camreta v. Greene*, 563 U.S. ——, ——, 131 S. Ct. 2020, 2030–2031, 179 L. Ed. 2d 1118 (2011); *al-Kidd*, 131 S. Ct. at 2080.

Defendants argue that the § 1983 claims should be dismissed because Plaintiff has failed to allege the following: **(a)** these Defendants' personal involvement in the alleged constitutional deprivations; **(b)** an Eighth Amendment deprivation; **(c)** a Thirteenth Amendment deprivation; **(d)** a Fourteenth Amendment due process deprivation; and **(e)** a valid failure-to-train-and-supervise claim. The Court addresses the arguments as follows.

### a. Personal Involvement in Alleged Constitutional Deprivations

These Defendants first argue that they are qualifiedly immune from suit on the § 1983 claims because Plaintiff has failed to allege that these Defendants were personally involved in the alleged constitutional deprivations.

#### i. Epps and McTeer

These Defendants maintain that Plaintiff's sole allegations pertaining to Epps' and McTeer's purported involvement in the alleged constitutional deprivations is that Epps and McTeer are responsible for the alleged constitutional deprivations due to their supervisory positions as the Commissioner of Mississippi Department of Corrections ("MDOC") and Correctional Director for Region I, respectively, and that these allegations are insufficient to show personal involvement in the alleged constitutional deprivations or a causal connection between their acts and the alleged constitutional deprivation, as § 1983 does not create supervisory liability.

Plaintiff argues in response that although it is well understood in the law that *respondeat superior* does not afford a basis for liability under § 1983, *see Monell v. New York City*

*Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), this Court should find that the *Monell* rule does not apply in the case *sub judice* based on the dissent in *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). This argument is unavailing. The Court agrees that the strong dissents in *Brown* suggest that deliberate indifference liability and *respondeat superior* liability may be one and the same. *See Brown*, 520 U.S. at 416–37, 117 S. Ct. 1382; *Connick v. Thompson*, —— U.S. ——, ——, 131 S. Ct. 1350, 1365 n.12 (Mar. 29, 2011) (interpreting the *Brown* dissents). However, since those dissents, the United States Supreme Court has consistently held that a § 1983 claim cannot proceed on a *respondeat superior* theory. *See e.g.*, *Connick*, 131 S. Ct. at 1365 n.12 ("We stand by the longstanding rule—reaffirmed by a unanimous Court earlier this Term—that to prove a violation of § 1983, a plaintiff must prove that "the municipality's own wrongful conduct caused his injury, not that the municipality is ultimately responsible for the torts of its employees.") (internal quotation marks and citations omitted). The Fifth Circuit has also repeatedly indicated that "[l]iability under the doctrine of *respondeat superior* is not cognizable in § 1983 actions." *See, e.g., Beaulieu v. Lavigne*, —— F. App'x ——, 2013 WL 4478228, at *4 (Aug. 22, 2013) (quoting *Sanders–Burns v. City of Plano, Tex.*, 594 F.3d 366, 380 (5th Cir. 2010)). Because this Court is bound by the precedent of the United States Supreme Court and the Fifth Circuit, the Court finds that Plaintiff's *respondeat superior* liability theory may not be brought in this § 1983 action.

Plaintiff's amended complaint does not allege that either Epps or McTeer had personal involvement in the events leading to his injury, nor does he allege that Epps or McTeer committed wrongful acts that were causally related to the alleged constitutional violations. At the time of the alleged incidents, Epps was the Commissioner of MDOC, but Plaintiff does not

10

allege that Epps had any personal involvement with the alleged incidents, including placing him in the unsanitary, unhealthy work environment at Tyson and detaining him after he had completed paying off his restitution. McTeer was Community Correctional Director for Region I, which includes Leflore County Restitution Center where Plaintiff was a resident during the alleged incidents, but Plaintiff also does not allege that McTeer had any personal involvement with the alleged incidents giving rise to this suit. Simply, there are no allegations that either Epps or McTeer were involved in the incidents giving rise to this suit. Although Plaintiff does vaguely allege that McTeer was involved in making unconstitutional policies that resulted in Plaintiff's injury, Pl.'s Am. Compl. [12] ¶ 45, no alleged facts support this statement. Similarly, although Plaintiff does vaguely allege that Epps and McTeer, as well as all other Defendants in the case *sub judice*, "failed to train and supervise their officers, agents, servants, employees and attorneys, and all other persons in active concert or participation," *id.* ¶ 53, no alleged facts support this statement. Therefore, the amended complaint lacks allegations that indicate that Epps and McTeer were personally involved in the alleged constitutional deprivations or that sufficiently tie the alleged constitutional violations to Epps' or McTeer's alleged wrongful conduct. For these reasons, Epps and McTeer are qualifiedly immune from suit on all § 1983 claims for damages asserted against them in their individual capacities. *See, e.g.*, *Fleming*, 497 F. App'x at 389; *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999).

However, qualified immunity only extends to the § 1983 claims for damages. *Johnson v. Epps*, 479 F. App'x 583, 591 (5th Cir. 2012) (per curiam) (citing *Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991)); *accord Scribner v. Linthicum*, 232 F. App'x 395, 397 (5th Cir. 2007) (per curiam). *See also Burton v. Owens*, 511 F. App'x 385, 2013

WL 586825, at *3 (5th Cir. Feb. 14, 2013) (per curiam) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) (stating that in certain circumstances "[g]overnment officials sued <u>for damages</u> under § 1983 are entitled to qualified immunity, and thus protected from liability <u>for civil damages</u>") (emphases added)). Thus, because the present motion requests dismissal on qualified immunity grounds, Plaintiff's § 1983 claims for declaratory relief against these Defendants in their individual capacities survive the present motion.

### ii. Bradley

Looking to Plaintiff's amended complaint, Plaintiff alleges that Bradley controlled Plaintiff's work assignments while he was a resident at Leflore County Restitution Center, Pl.'s Am. Compl. [12] ¶ 33; assigned Plaintiff to work at Tyson, *id.* ¶ 20; did not assign Plaintiff another job for two months after Plaintiff left Tyson, "essentially le[aving Plaintiff] in limbo," *id.* ¶ 34, for the reason that "[Plaintiff] angered [Bradley] because [Plaintiff] could not fulfill his duties at [Tyson], thus negatively impacting any and all personal benefits [Bradley] is believed to have received from [Tyson] as a result of Plaintiff's placement," *id.* ¶ 35; and "arbitrar[ily] and capricious[ly]" reassigned Plaintiff to Tyson in March of 2008 "[d]espite the fact [that Plaintiff] had a medical condition hampering his productivity at Tyson," *id.* ¶ 37. Plaintiff further alleges that "[i]t was well known among residents at [Leflore County Restitution Center] that [Bradley] wanted as many of his residents as possible to be assigned to [Tyson], even when other opportunities were available." *Id.* ¶ 35. The Court finds that Plaintiff has at least raised a genuine dispute of material fact that Bradley was personally involved in the alleged constitutional deprivations. The Court thus finds that Bradley is not qualifiedly immune on this

ground and will now analyze whether Bradley is subject to liability for an alleged Eighth, Thirteenth, or Fourteenth Amendment violation, or on a failure-to-train-or-supervise theory.

### b. § 1983 Eighth Amendment Claim

Plaintiff's amended complaint asserts under § 1983 that Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment when they subjected Plaintiff and others to the inherently harmful conditions of a chicken plant wherein workers were forced to work sometimes "covered in chicken feces" and "in an environment filled with dust, feathers, and chicken feces," even if physically ill, and alongside illegal immigrants who might carry diseases such as TB and workers who might "urinat[e] close to the slaughter line." *Id.* ¶¶ 15, 20, 24–26, 31, 52, 58, 62, 71–75. These Defendants contend that Bradley is qualifiedly immune from suit on the § 1983 Eighth Amendment claim, because Plaintiff has failed to allege an Eighth Amendment violation, and further that even if Plaintiff has alleged an Eighth Amendment violation, Bradley is qualifiedly immune on the Eighth Amendment claim because his actions were objectively reasonable.

These Defendants first argue that "Plaintiff has offered nothing more than conclusory allegations of deliberate indifference by [Bradley] and has offered no factual backing to show that [Bradley] knew of a substantial risk of harm to Plaintiff at the Tyson plant, i.e., TB, and then disregarded that risk." Defs.' Mem. Br. Supp. MSJ [49] at 8. In their reply, these Defendants further assert that certain pleading deficiencies are fatal to Plaintiff's Eighth Amendment claim, namely the failure to allege that Bradley knew of a TB outbreak at the plant and continued to assign inmates there and that even one other employee contracted TB while working at the Tyson plant.

Plaintiff contends in response that he has adequately alleged deliberate indifference on the part of Bradley. Plaintiff maintains that his allegations show that "Bradley, fully aware that Tyson's plant had a negative impact on Plaintiff's health, forced him to return to the plant" and that "[m]oreover, Plaintiff has alleged, and has the right to fully investigate, claims that there was a financial relationship between [Bradley] and Tyson concerning the assignment of prisoners in [Leflore County Restitution Center]'s care to Tyson." Pl.'s Resp. Opp'n to Defs.' MSJ [51] at 18. Plaintiff further maintains that "[t]he fact that Bradley punished Plaintiff by not providing him an assignment two (2) months after [Leflore County Restitution Center] removed him from Tyson, coupled with the fact [that] Bradley inexplicably reassigned Plaintiff to the plant fully aware of Plaintiff's inability to safely work at the facility, demonstrates something did not smell right in Carthage and it was not just the dead chickens." *Id.*

The Court finds as follows. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)). Exposure to a serious communicable disease while under conditions of confinement can be actionable under the Eighth Amendment. *See Helling v. McKinney,* 509 U.S. 25, 33–34, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993) (citing *Gates v. Collier,* 501 F.2d 1291 (5th Cir. 1974)).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer,* 511 U.S. at 828, 114 S. Ct. 1970. To be liable under the Eighth Amendment, the prison official must "know[ ] of and disregard[ ] an excessive

risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S. Ct. 1970; *see also Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002) ("The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the jail officials were actually aware of the risk, yet consciously disregarded it."). "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Such a showing requires evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wonton disregard for any serious medical needs." *Id.* at 756 (quoting *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Id.*; *see Hare v. City of Corinth*, 74 F.3d 633, 645, 649–50 (5th Cir. 1996) (en banc). The Supreme Court explained in *Farmer*:

> An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. *See* [W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, PROSSER AND KEETON ON LAW OF TORTS] §§ 2, 34, pp. 6, 213–214 [(5th ed. 1984)]; *see also* Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680; *United States v. Muniz*, 374 U.S. 150, 83 S. Ct. 1850, 10 L. Ed. 2d 805 (1963). But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837–38, 114 S. Ct. 1970. The Supreme Court further explained in *Farmer*: "Under the [subjective deliberate indifference] test we adopt today, an Eighth Amendment

15

claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842, 114 S. Ct. 1970 (citing Cf. 1 C. TORCIA, WHARTON'S CRIMINAL LAW § 27, p. 141 (14th ed. 1978)). Indeed, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . , and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*, 114 S. Ct. 1970 (internal citations omitted). However, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844, 114 S. Ct. 1970.

The Fifth Circuit requires a plaintiff bringing a subjective deliberate indifference claim to show the following: "(1) that each defendant had subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn; (2) that each defendant actually drew that inference; and (3) that each defendant's response to the risk indicates that the [defendant] subjectively intended that harm occur." *Estate of Allison v. Wansley*, No. 12–40749, 2013 WL 1983959, at *5 (5th Cir. May 15, 2013) (per curiam) (quoting *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009) (internal quotation marks omitted)).

In viewing Plaintiff's amended complaint, Plaintiff alleges with respect to Bradley that immediately after Plaintiff entered Leflore County Restitution Center to pay off his court-ordered restitution, Bradley "arbitrarily" assigned him to work at Tyson, *see* Pl.'s Am. Compl. [12] ¶¶ 15, 20; Plaintiff assumed the duties of a chicken hanger in an unsanitary and unhealthy work environment filled with dust, feathers, and chicken feces, *id.* ¶¶ 20, 24; "[a]s a result of being

16

forced to fulfill his criminal sanctions" at Tyson, Plaintiff suffered swelling in his face, neck, and hands soon after his time at Tyson began and was eventually diagnosed with TB, *id.* ¶¶ 25, 32;[2] Bradley, as one of the Defendants, "knew or should have known" of the unsanitary conditions and physical dangers of TB present at Tyson's Carthage, Mississippi facility, *id.* ¶¶ 27, 30, 38–39; Bradley and other Defendants failed to test Plaintiff monthly for TB in accordance with Mississippi Code § 41-23-1, *id.* ¶ 39; after Plaintiff could no longer fulfill his work obligations because of medical ailments that developed at Tyson, Plaintiff returned to Leflore County Restitution Center, where he awaited his next work assignment from Bradley, *id.* ¶ 33; Bradley did not assign him another job for two months, during which time Plaintiff "was essentially left in limbo," based on the fact that Plaintiff had angered Bradley by not fulfilling his duties at Tyson, "thus negatively impacting any and all personal benefits [Bradley] is believed to have received from [Tyson] as a result of Plaintiff's placement," *id.* ¶¶ 34–35; "[i]t was well known among residents at [Leflore County Restitution Center] that [Bradley] wanted as many of his residents as possible to be assigned to [Tyson], even when other opportunities were available, *id.* ¶ 35; after a brief stint working at another work assignment, Bradley "reassigned Plaintiff to Tyson, "contrary to [Plaintiff's] best interest and despite the fact [that] he had a medical condition hampering his productivity at Tyson," *id.* ¶ 37; and Bradley reassigned Plaintiff to work at Tyson "arbitrar[il]y and capricious[ly]," because the reassignment "personally benefited" Bradley, *id.*

Taking Plaintiff's allegations as true, Bradley had subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn. Further, Plaintiff has

---

[2] Although Plaintiff maintains in his response that he alleges in his amended complaint that he also "told" these Defendants that "Tyson's plant was unsanitary," *see* Pl.'s Resp. Opp'n to Defs.' MSJ [51] at 18, this is not stated in the amended complaint, nor is it able to be implied from the allegations in the amended complaint. Therefore, the Court does not consider this supposed allegation in its analysis.

alleged that Bradley actually drew an inference that his actions exposed Plaintiff to a substantial risk of serious harm. Although the amended complaint does not expressly state those words, these Defendants have introduced evidence that could indicate that Plaintiff had TB when he was first sentenced to Leflore County Restitution Center and thus that Bradley known or should have known that Plaintiff had TB when he assigned him to work at Tyson. *See, e.g.*, Pl.'s Restitution File [48-2] at 4. This evidence, if anything, provides evidentiary support for Plaintiff's argument that Bradley ignored his complaints of physical ailments and reassigned him to Tyson, knowing that by doing so he was exposing Plaintiff to a substantial risk of serious harm. Therefore, it can be inferred from the circumstances that Bradley was subjectively aware of a substantial risk of harm to Plaintiff's health by placing him at Tyson. *See, e.g., Johnson*, 479 F. App'x at 590–91 (allegations that policy was implemented allowing inmates to be exposed to communicable diseases through unsanitary barbering procedures alleged deliberate indifference); *Easter v. Powell*, 467 F.3d 459, 463–64 (5th Cir. 2006) (allegations that prison nurse knew that plaintiff had a heart condition, was experiencing severe chest pain, and did not have his prescribed heart medication permitted inference that prison nurse was subjectively aware of substantial risk of harm to plaintiff's health by denying plaintiff treatment for extreme chest pain and ultimately constituted deliberate indifference); *Gomez v. Warner*, No. 94–60530, 39 F.3d 320, 1994 WL 612371, at *2–*3 (5th Cir. 1994) (per curiam) (internal citation omitted) (allegations that inmates were required to share communal razors without disinfecting them between uses, subjecting inmates to the risk of exposure to HIV and hepatitis alleged deliberate indifference); *see also Estelle*, 429 U.S. at 104–05, 97 S. Ct. 285 (noting that deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally

18

denying or delaying access to medical care or intentionally interfering with the treatment once prescribed").

The Court next examines whether Plaintiff's allegations show that Bradley "disregard[ed] [the] risk by failing to take [objectively] reasonable measures to abate it." *See Burton*, 511 F. App'x at 389 (citing *Farmer*, 511 U.S. at 847, 114 S. Ct. 1970). "To impose liability, 'the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Id.* (quoting *Domino*, 239 F.3d at 756 (in turn quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). The uncontroverted fact that Plaintiff has TB does not alone present a genuine dispute of material fact sufficient to overcome a qualified immunity defense on the deliberate indifference issue. *See Martin v. Seal*, 510 F. App'x 309, 315 (5th Cir. Jan. 31, 2013) (per curiam) (the uncontroverted fact that plaintiff had asthma alone did not foreclose qualified immunity defense on deliberate indifference issue). However, Plaintiff has alleged and provided some evidence that he was exposed to a substantial risk of contracting TB and was denied needed medical care for TB while he was a resident at Leflore County Restitution Center and after he was assigned to work at Tyson, that he informed his supervisor at Tyson of his physical ailments and had to stop working at Tyson due to his medical ailments, and that Bradley actively disregarded the substantial risk of placing Plaintiff in an unsanitary, unhealthy work environment by subsequently reassigning Plaintiff to work at Tyson. The Court finds that Plaintiff has raised a material factual issue that Bradley disregarded the risk by failing to take reasonable measures to abate it, and thus, that Plaintiff has alleged an Eighth Amendment violation.

Next, the Court must determine whether Bradley is qualifiedly immune regardless due to objective reasonableness. A "clearly established" constitutional right must be specified at the appropriate level of generality in order to hold an official personally liable for violating it; "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This does not require that the exact same action must previously have been held unconstitutional, but only that, in light of pre-existing law, the unlawfulness must have been apparent." *Johnson*, 479 F. App'x at 591 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). At the time Bradley committed these alleged acts, the law was clearly established that a plaintiff could demonstrate an Eighth Amendment violation by showing that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Easter*, 467 F.3d at 465 (quoting *Domino*, 239 F.3d at 756). The United States Supreme Court had also held in *Helling v. McKinney* that a prison official's deliberate indifference to the potential future health risks of exposure to environmental tobacco smoke could constitute an Eighth Amendment claim. 509 U.S. at 35, 113 S. Ct. 2475. In that case, the Supreme Court hypothesized that a prison official's deliberate indifference to other types of potential harms, such as "exposure of inmates to a serious, communicable disease" would also be actionable, even if the complaining inmate did not actually develop the disease. *See id.* at 33, 113 S. Ct. 2475. The above-referenced allegations and evidence support that Bradley's conduct was not objectively reasonable in light of clearly established law. Therefore, this argument for qualified immunity on the Eighth Amendment claim is not well taken.

20

These Defendants' next argument on the Eighth Amendment claim is that "Plaintiff's allegations simply are not supported by the objective evidence." Defs.' Mem. Br. Supp. MSJ [49] at 8. They make four main challenges to Plaintiff's assertions, and Plaintiff argues against each challenge in his response to the motion.

First, these Defendants maintain that Plaintiff's claim of contracting TB while working at Tyson is baseless, because Plaintiff was tested for TB upon entering the Leflore County Restitution Center pursuant to MDOC policy, and he tested positive for TB; these Defendants attach to their motion a medical record from the Mississippi State Department of Health. *See, e.g.*, Pl.'s Restitution File [48-2] at 4; Pl.'s Patient Profile [53-2]. Plaintiff argues in response that the evidence concerning Plaintiff's purported TB test upon entering Leflore County Restitution Center did not surface for three years, and Plaintiff was not informed he had contracted TB until he received the letter from the Mississippi State Department of Health; the letter is attached to Plaintiff's amended complaint and states that "[d]uring your employment at Tyson you may have been exposed to an individual who has been diagnosed with [TB]. . . . We urge you to obtain a tuberculin skin test as soon as possible to protect your health . . . ." *See* Miss. State Dep't of Health Letter [12] at 54. Plaintiff maintains in support that the MDOC Receiving Form also indicates that during his examiner-inmate questionnaire, Plaintiff did not indicate to the examiner that he had TB, nor did he indicate that he was undergoing medical treatment for any condition. *See* Examiner-Inmate Questionnaire [48-2] at 29, [50-2] at 1. Plaintiff also apparently signed a statement dated September 28, 2007, providing: "I am not at the present time not ill in any way, nor [do I] have anything physically or mentally wrong with me that would prevent me from maintaining employment due to physical or mental reasons." *See* Pl.'s Restitution File [48-2] at 28.

21

Second, these Defendants maintain that Plaintiff's claim that he was forced to end his employment with Tyson because of his medical ailments and problematic work environment is baseless, because Plaintiff's disciplinary report dated October of 2007 indicates his real reason for termination was for "arguing with his supervisor." *See id.* at 10. Plaintiff argues in response that his health issues were the root of the conflict he had with his Tyson supervisor, as he had complained to the supervisor about his health issues and the supervisor had refused to let Plaintiff see a nurse.

Third, these Defendants maintain that Plaintiff's claims that he was forced to work at Tyson and that he was forced to leave his employment at the Greenwood Country Club to return to work at Tyson are baseless, because Plaintiff completed an application for employment at Tyson, *see* Pl.'s Employment Records [48-3] at 1–11, and Plaintiff actually requested to be sent back to Tyson after he began his work assignment at Greenwood Country Club, *see* Pl.'s Restitution Log [48-2] at 8, 04/04/2008 Entry ("Subject requested to be sent back to Tyson. Subject states it's taking him too long to pay out at country club."). Plaintiff argues in response that his employment application to work at Tyson is not indicative that Plaintiff was reassigned to Tyson upon his request, and further argues that the context of said application is necessary to an adequate determination of this issue. Plaintiff maintains that dismissing the Eighth Amendment claim on summary judgment prior to allowing him an opportunity to conduct merits-discovery to attempt to further challenge these Defendants' evidence would be inappropriate. The Court agrees.[3]

---

[3] Plaintiff alternatively requests that the Court allow him to amend his complaint. Because the Court finds that Plaintiff's § 1983 claims for damages against Epps and McTeer must be dismissed as facially deficient, and that Plaintiff's § 1983 claim premised on an Eighth Amendment violation against Bradley shall survive the present motion, the Court need not rule on Plaintiff's alternative request to amend his complaint. Any separate request to further amend the amended complaint should be presented in a subsequent motion for leave to amend the amended complaint.

Overall, the Court finds that Plaintiff has alleged that Bradley acted with deliberate indifference in violation of his Eighth Amendment right to be free from cruel and unusual punishment and that several genuine disputes of fact exist concerning whether Bradley did engage in such conduct. These genuine factual issues preclude summary judgment in favor of Bradley on the Eighth Amendment claim on qualified immunity grounds. For all of the foregoing reasons, the Court finds that Bradley is not entitled to qualified immunity on the individual-capacity § 1983 Eighth Amendment claim for damages.

### c. § 1983 Thirteenth Amendment Claim

Plaintiff's amended complaint asserts under § 1983 that Defendants violated his Thirteenth Amendment right to be free from slavery and/or involuntary servitude by forcefully detaining Plaintiff at Leflore County Restitution Center even after he had satisfied his restitution, as part of a conspiracy "to deprive, by force[,] intimidation[,] or threat, [Plaintiff] from receiving his freedom after he satisfied the terms of his sentencing"; to "deny [Plaintiff] his civil rights"; and "to intimidate him." Pl.'s Am. Compl. [12] ¶¶ 2, 3, 40, 59, 63, 66–70, 79–82. These Defendants contend that Bradley is qualifiedly immune on this claim and make two arguments in support of this contention.

First, Defendants argue that the language of the Thirteenth Amendment itself excludes convicted criminals from its protections, and thus that because Plaintiff is challenging the length of his imprisonment at Leflore County Restitution Center as a convicted criminal he is barred from asserting a Thirteenth Amendment claim against Bradley. Second, Defendants argue that Plaintiff's Thirteenth Amendment claim is barred because he failed to obtain a favorable ruling reversing his conviction or sentence prior to bringing this suit as is required by *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

23

Plaintiff maintains in response that his Thirteenth Amendment claim is viable because he is not challenging the conviction or sentence itself, but is instead challenging the alleged actions of Bradley after the terms of his conviction and imprisonment concluded. In this respect, Plaintiff points to his allegations that after he left Tyson, Bradley did not give him a new work assignment for two months, during which time Plaintiff was rendered unable to work off his restitution, *see* Pl.'s Am. Compl. [12] ¶¶ 33–34, and also that he was detained by Bradley after he had satisfied his court-ordered restitution, *see id.* ¶ 40.

The Court finds as follows. The Thirteenth Amendment, which was enacted in 1865, provides: "Neither slavery nor involuntary servitude, except as a punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction. Congress shall have power to enforce this article by appropriate legislation." U.S. CONST. amend. XIII. By its terms, the Thirteenth Amendment abolished slavery and involuntary servitude in the United States, and gave Congress enforcement power. Although the Thirteenth Amendment gave former slaves freedom, it stopped short of giving them rights—that was one of the aims of the Fourteenth Amendment. *See, e.g., McDonald v. City of Chicago,* ___ U.S. ___, ___, 130 S. Ct. 3020, 3074, 177 L. Ed. 2d 894 (June 28, 2010); *Slaughter-House Cases*, 16 Wall. 36, 81, 21 L. Ed. 394 (1873). *But see McDonald*, 130 S. Ct. at 3079 (suggesting that the congressional debates on the Fourteenth Amendment show that many believed the Thirteenth Amendment enforced constitutional rights against the States and thus that passage of the Fourteenth Amendment would be superfluous). The Thirteenth Amendment is peculiar to the Constitution in that its constitutional guarantee of individual liberty applies to the actions of both state actors and private entities; it is thus sometimes said to be an exception to the state action doctrine. *See, e.g., Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619, 111 S.

24

Ct. 2077, 114 L. Ed. 2d 660 (1991). Since the enactment of the Thirteenth Amendment, Congress has exercised its enforcement power by passing many pieces of legislation designed "to remove badges and incidents of slavery," *see Civil Rights Cases*, 109 U.S. 3, 20, 3 S. Ct. 18, 27 L. Ed. 835 (1883), the first following on the heels of the Amendment and known as the Civil Rights Act of 1866.

The Thirteenth Amendment by its plain language excludes from its protections those who are sentenced to indentured servitude "as a punishment for a crime whereof the party shall have been duly convicted." *See* U.S. CONST. amend. XIII. The Fifth Circuit stated in *Watson v. Graves*, 909 F.2d 1549 (5th Cir. 1990) that a prisoner who is "not sentenced to hard labor" as punishment for his conviction "retains his [T]hirteenth [A]mendment rights," provided that he can "show he was subjected to involuntary servitude or slavery." *Id.* at 1552. In that case, the Fifth Circuit defined "involuntary servitude" as "an action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement." *Id.* (internal citation omitted). The Fifth Circuit limited the reach of the definition by stating that "[w]hen the employee has a choice, even though it is a painful one, there is no involuntary servitude," and further explained that "[a] showing of compulsion is thus a prerequisite to proof of involuntary servitude." *See id.* (internal citations omitted). However, in a subsequent decision, *Ali v. Johnson*, 259 F.3d 317 (5th Cir. 2001), the Fifth Circuit distinguished the *Watson* statement about involuntary servitude as "an anomaly in federal jurisprudence. Two years before *Watson*, this court rejected a Thirteenth Amendment claim made by a Texas prisoner, citing a half dozen previous federal decisions and the text of the Thirteenth Amendment[.]" *See id.* at 318. *Ali* clarified that "inmates sentenced to incarceration cannot state a viable Thirteenth Amendment claim if the prison system requires them to work" and referred to sentences of imprisonment with

the possibility of work. *See id.* at 317. Here, Plaintiff's allegations refer to facts and circumstances that occurred during his sentence at Leflore County Restitution Center to pay off his court-ordered restitution. Clearly, he was required to work as part of his sentence. Thus, based on the plain language of the Thirteenth Amendment and the Fifth Circuit's holding in *Ali*, Plaintiff's allegations that he was forcefully detained by Bradley do not allege a Thirteenth Amendment violation. No amount of merits-discovery could aid Plaintiff in prevailing on this claim, as the Thirteenth Amendment is not the proper vehicle for such allegations. Because Plaintiff has not alleged a Thirteenth Amendment violation, Bradley is entitled to qualified immunity on the § 1983 Thirteenth Amendment claim for damages.

### d. § 1983 Fourteenth Amendment Claim

Plaintiff's amended complaint asserts under § 1983 that Defendants' actions violated Plaintiff's Fourteenth Amendment procedural and substantive due process rights. Pl.'s Am. Compl. [12] ¶¶ 64, 76–78. Plaintiff maintains that his allegations show that Defendants subject Plaintiff repeatedly to unsanitary and unsafe working conditions and refused to set him free after he had satisfied the dictates of his sentencing order, and that these allegations show that Defendants violated Plaintiff's Fourteenth Amendment right to bodily integrity. Plaintiff further maintains that the Defendants' decision to send Plaintiff back to Tyson a second time was arbitrary and capricious. These Defendants argue that Plaintiff has failed to offer anything more than conclusory allegations of a Fourteenth Amendment violation and seems to rely only on the allegations related to his Eighth Amendment claim. The Court finds this argument to be well taken.

The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. To state a Fourteenth

Amendment due process claim under § 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). "The threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest." *McCasland v. City of Castroville*, 514 F. App'x 446, 448 (5th Cir. 2013) (per curiam) (quoting *DePree v. Saunders*, 588 F.3d 282, 289 (5th Cir. 2009)). In *DeShaney v. Winnebago County*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), the United States Supreme Court stated:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. *See Estelle v. Gamble*, [429 U.S. at 103, 97 S. Ct. 285] ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met"). In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause . . . .

*Id.* at 199–200, 109 S. Ct. 998 (internal citations and footnotes omitted). Thus, the Fourteenth Amendment affords a person the right to be free of state-occasioned damage to bodily integrity if the plaintiff can show the defendant's actions were taken with deliberate indifference. *Whitley v. Hanna*, ___ F.3d ___, 2013 WL 4029134, at *15 (5th Cir. Aug. 8, 2013) (quoting *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450–51 (5th Cir. 1994) (en banc) (citing *Shillingford v. Holmes*,

634 F.2d 263, 265 (5th Cir. 1981))). Similarly, the Eighth Amendment's proscription of cruel and unusual punishments is violated by "deliberate indifference to serious medical needs of prisoners." *See Estelle*, 429 U.S. at 104, 97 S. Ct. 285.

The Court finds that Plaintiff has not alleged a Fourteenth Amendment claim separate from his Eighth Amendment right to be free from cruel and unusual punishment—which is asserted against state actors through the Fourteenth Amendment anyway.[4] Thus, the Eighth Amendment is the proper vehicle for his claim. *See Whitley v. Albers*, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) ("We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners . . . . "). Allowing a factually identical Fourteenth Amendment due process claim would be superfluous. For the foregoing reasons, Bradley is entitled to qualified immunity on the § 1983 Fourteenth Amendment due process claim for damages.

### e. § 1983 Failure-to-Train-or-Supervise Claim

Plaintiff's amended complaint asserts under § 1983 that Defendants failed to train and/or supervise their employees not to violate Plaintiff's constitutional rights and that this failure to train and/or supervise was the proximate cause of Plaintiff's injuries. Pl.'s Am. Compl. [12] ¶¶ 53, 83–87. Plaintiff does not allege any facts in support of this claim. These allegations are conclusory in nature and do not present a § 1983 failure-to-train-or-supervise claim against Bradley. Thus, Bradley is entitled to qualified immunity on the § 1983 failure-to-train-or-supervise claim.

---

[4] The Eighth Amendment by its own terms applies only to the federal government and is applicable to states only through the due process clause of the Fourteenth Amendment. *See Tuilaepa v. California*, 512 U.S. 967, 970, 114 S. Ct. 2630, 129 L. Ed. 2d 750 (1994).

### f. Conclusion of § 1983 Claims

In sum, for the foregoing reasons, the present motion for summary judgment is granted in the following respects: Epps and McTeer are entitled to qualified immunity on all § 1983 claims for damages against them in their individual capacities, because Plaintiff has failed to allege that either Epps or McTeer was personally involved in the alleged constitutional deprivations. Bradley is entitled to qualified immunity on the individual-capacity § 1983 Thirteenth Amendment claim for damages, because Plaintiff has failed to allege an underlying Thirteenth Amendment violation against Bradley.[5] Bradley is entitled to qualified immunity on the individual-capacity § 1983 Fourteenth Amendment claim for damages, because Plaintiff has failed to allege a separate Fourteenth Amendment violation against Bradley.[6] Finally, Bradley is entitled to qualified immunity on the individual-capacity § 1983 failure-to-train-or-supervise claim, because Plaintiff has failed to allege facts in support of this claim.

Further, the motion for summary judgment is denied in the following respect: Bradley is not entitled to qualified immunity on the individual-capacity § 1983 Eighth Amendment claim.

### 2. § 1985(3) Conspiracy Claim

Plaintiff's amended complaint further asserts under § 1985(3) that these Defendants conspired to deny his constitutional rights. Under § 1985(3), "[a] plaintiff must show membership in some group with inherited or immutable characteristics . . . or that the discrimination resulted from the plaintiff's political beliefs or associations." *Flander v. Kforce, Inc.*, No. 12–20754, 2013 WL 1777496, at *4 (5th Cir. Apr. 25, 2013) (per curiam) (quoting

---

[5] Given the reasoning behind this disposition, the Court will entertain a Rule 12(b)(6) motion to dismiss on the individual-capacity § 1983 Thirteenth Amendment claim for declaratory relief against Defendant Bradley.

[6] Given the reasoning behind this disposition, the Court will entertain a Rule 12(b)(6) motion to dismiss on the individual-capacity § 1983 Fourteenth Amendment claim for declaratory relief against Defendant Bradley.

*Galloway v. Louisiana*, 817 F.2d 1154, 1159 (5th Cir. 1987)). Plaintiff argues that he is entitled to discovery to flesh out his § 1985(3) claims against these Defendants, and argues in the alternative that the claim should be sustained because his status as a prisoner is an "immutable characteristic" triggering the protection of § 1985. The Court finds that neither of these arguments is well taken.

Plaintiff has alleged no racial or otherwise class-based invidious discriminatory animus behind these Defendants' conduct, nor has he alleged that discrimination resulted from his political beliefs or associations. Section 1985 was enacted to address race-based animus and has rarely been extended further. *See, e.g.*, *United Bhd. of Carpenters and Joiners v. Scott*, 463 U.S. 825, 836, 103 S. Ct. 3352, 3360, 77 L. Ed. 2d 1049 (1983) ("[I]t is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against [African-Americans] and those who championed their cause[.]"); *McLellan v. Miss. Power & Light Co.*, 545 F.2d 919, 928–29 (5th Cir. 1977) (instructing courts to exercise restraint when confronted with class-based discrimination grounded in a non-racial animus). A § 1985(3) class must possess a discrete, insular, and immutable characteristic, such as race, gender, religion, or national origin. *See Galloway*, 817 F.2d at 1159; *McLean v. Int'l Harvester Co.*, 817 F.2d 1214, 1219 (5th Cir. 1987). *See also Murphy v. Mt. Carmel High Sch.*, 543 F.2d 1189, 1192 n.1 (7th Cir. 1976). A class that exists only because its members are treated similarly by the defendant is not subject to § 1985(3)'s protections. *See Roe v. Abortion Abolition Soc'y*, 811 F.2d 931, 934–35 (5th Cir.), *cert. denied*, 484 U.S. 848, 108 S. Ct. 145, 98 L. Ed. 2d 101 (1987). The Fifth Circuit has stated that "[p]risoners are not a suspect or quasi-suspect class." *Phillips ex rel. Phillips v. Monroe County*, 311 F.3d 369, 376 n.2 (5th Cir. 2002); *accord Pryor v. Brennan*, 914

F.2d 921, 923 (7th Cir. 1990); *Moss v. Clark*, 886 F.2d 686, 690 (4th Cir. 1989); *Zipkin v. Heckler*, 790 F.2d 16, 18 (2d Cir. 1986).

Based on all the foregoing, this Court finds that Plaintiff's status as a prisoner is not an immutable characteristic allowing him the protections of § 1985(3), and he has not otherwise alleged class-based animus; thus, Defendants Epps, McTeer, and Bradley are qualifiedly immune from suit on the individual-capacity § 1985(3) conspiracy claim.

### 3. 42 U.S.C. § 1997e(e) Prior Physical Injury Issue

These Defendants argue that they are immune from suit on Plaintiff's federal emotional or mental injury claims, because Plaintiff cannot show a prior physical injury as is required to maintain such claims under 42 U.S.C. § 1997e(e), and further point to evidence tending to show that Plaintiff tested positive for TB upon entering the Leflore County Restitution Center. Plaintiff maintains that this argument is premature as it precedes merits-discovery and as Plaintiff has alleged and pointed to evidence tending to show that he contracted TB after entering the Leflore County Restitution Center. The Court finds Plaintiff's argument in this respect to be well taken.

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correction facility, for mental or emotional injury while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). This statute applies in the case *sub judice*, because Plaintiff meets the statutory definition of prisoner. *See id.* § 1997e(h) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."). The Court finds that Plaintiff's mental or emotional injury claim is not barred by § 1997e(e), because he has

31

alleged and pointed to evidence tending to show that he sustained a physical injury, that is, the contraction of TB, while a resident at Leflore County Restitution Center. This alleged injury satisfies the statutory hurdle of § 1997e(e). Although these Defendants contend that Plaintiff contracted TB prior to entering Leflore County Restitution Center, this merely presents a factual dispute warranting merits-discovery. Thus, the Court finds that these Defendants' motion for summary judgment should be dismissed on this ground.

### 4. State Law Claims

These Defendants maintain that Plaintiff's state law claims for negligence, gross negligence, and intentional infliction of emotional distress should be dismissed on several grounds.[7] Because the Court finds that Epps, McTeer, and Bradley are qualifiedly immune from suit on the state law claims under the Mississippi Tort Claims Act (the "MTCA"), the Court does not reach these Defendants' other arguments for dismissal of the state law claims.

The MTCA provides in pertinent part:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

---

[7] These Defendants also argue in the present motion that the battery claim should be dismissed. However, in its recent opinion [59] and Order [58] ruling on Tyson's motion to dismiss [18], the Court dismissed Plaintiff's battery claim as untimely pled and barred by the one-year statute of limitations set forth in Mississippi Code § 15-1-35. As the Court stated in its opinion:

> The Court finds from the face of the pleadings that Plaintiff alleges that he contracted TB during his time working at Tyson. Pl.'s Am. Compl. [12] ¶ 15. Plaintiff alleges he worked at Tyson for two weeks during the month of October 2007, *id.* ¶ 33, as well as the months of March through July of 2008, *id.* ¶¶ 37, 41. On February 8, 2010, Plaintiff filed his initial complaint—approximately one year and six months after he left his employment at Tyson. Thus, Plaintiff's battery claim is untimely pled and must be dismissed as barred by the applicable statute of limitations.

Mem. Op. Granting in Part and Denying in Part Tyson's Mot. Dismiss [59] at 12. The Court further held that Plaintiff had not alleged any facts supporting fraudulent concealment (which tolls the limitations period until the claim is discovered or should have been discovered). Accordingly, the Court need not reach these Defendants' arguments for dismissal of the battery claim, as that claim is barred as to all Defendants under the applicable statute of limitations.

. . .

> (m) Of any claimant who at the time the claim arises is an
> inmate of any detention center, jail, workhouse, penal farm,
> penitentiary or other such institution, regardless of whether
> such claimant is or is not an inmate of any detention center,
> jail, workhouse, penal farm, penitentiary or other such
> institution when the claim is filed.

MISS. CODE ANN. § 11–46–9(1)(m)). "[The statute,] without exception, prohibits all claims from

claimants who are inmates at the time the claim arises." *Clay v. Epps*, 19 So. 3d 743, 746 (Miss.

Ct. App. 2008); *Whitt v. Gordon*, 872 So. 2d 71, 74 (Miss. Ct. App. 2004). "The inmate remains

an inmate while being transported, while participating in public service work programs or while

on leave if a pass is granted." *Wallace v. Town of Raleigh*, 815 So. 2d 1203, 1207–08 (¶ 16)

(Miss. 2002) (citing MISS. CODE ANN. §§ 47–5–401 through 47–5–421).

In all of the alleged incidents giving rise to the state law claims, Plaintiff was an inmate

of Leflore County Restitution Center and these Defendants were acting in the scope of their

employment in allegedly implementing a policy of assigning Plaintiff and other residents of

Leflore County Restitution Center to work at Tyson, an unsanitary, unhealthy work environment

where Plaintiff and others were exposed to TB. Therefore, Defendants Epps, Bradley, and

McTeer are all qualifiedly immune from suit on the state law claims under the MTCA. *See*

*Johnson*, 479 F. App'x at 592–93 (MDOC Commissioner's alleged negligent policy of

unsanitary barbering practices among inmates was implemented in scope of MDOC

Commissioner's employment); *Tillman v. MDOC*, 95 So. 3d 716, 717 (¶ 1) (Miss. Ct. App.

2012) (alleged failure to release inmate from incarceration upon completion of inmate's sentence

was done in scope of MDOC's employment; both negligence and intentional infliction of

emotional distress claims were within the purview of the statute); *see also Wallace*, 815 So. 2d at

1208–1209 (¶ 20) ("As stated in Miss[issippi] Code Ann[otated] § 11–46–9(1)(m), a

33

governmental entity is immune from all claims arising from claimants who are inmates at the time the claim arises. The Legislature provided for no exception to this provision[.]"). Accordingly, the Court finds that Defendants Epps, McTeer, and Bradley are qualifiedly immune from suit on the state law claims under the MTCA.

### D. Conclusion

In sum, the motion for summary judgment based on qualified immunity [48] filed by Defendants Christopher Epps, Lee McTeer, and Jonathan Bradley is **GRANTED IN PART AND DENIED IN PART,**[8] as follows:

1. The motion **[48]** is **GRANTED** in the following respects:

    a. Defendants Epps, McTeer, and Bradley are entitled to qualified immunity on the § 1985(3) conspiracy claim for damages against them in their individual capacities and on the state law negligence, gross negligence, and intentional infliction of emotional distress claims;[9]

    b. Defendants Epps and McTeer are entitled to qualified immunity on all § 1983 claims for damages against them in their individual capacities;

    c. Bradley is entitled to qualified immunity on the following claims for damages against him in his individual capacity:

        i. The § 1983 Thirteenth Amendment claim;

---

[8] Because qualified immunity only extends to the § 1983 claims for damages, *Johnson*, 479 F. App'x at 591 (citing *Chrissy F. by Medley*, 925 F.2d at 849); *Scribner*, 232 F. App'x at 397, and because the present motion was brought on the ground of qualified immunity, the individual-capacity claims for declaratory relief pertaining to the alleged constitutional violations survive the present motion.

[9] The battery claim was previously dismissed as barred by the applicable one-year statute of limitations in Mississippi Code § 15-1-35.

    **ii.** The § 1983 Fourteenth Amendment claim; and

    **iii.** The § 1983 failure-to-train-or-supervise claim.

 **b.** The following claims are **DISMISSED**:

   **a.** All § 1983 claims for damages against Defendants Epps and McTeer in their individual capacities;

   **b.** The § 1983 Thirteenth Amendment claim for damages against Bradley in his individual capacity;

   **c.** The § 1983 Fourteenth Amendment claim for damages against Bradley in his individual capacity;

   **d.** The § 1983 failure-to-train-or-supervise claim against Bradley in his individual capacity;

   **e.** The § 1985(3) conspiracy claim against Defendants Epps, McTeer, and Bradley in their individual capacities; and

   **f.** The state law negligence, gross negligence, and intentional infliction of emotional distress claims against Defendants Epps, McTeer, and Bradley.

**2.** The motion **[48]** is **DENIED** in the following respects:

   **a.** Bradley is not entitled to qualified immunity on the individual-capacity § 1983 Eighth Amendment claim for damages; and

   **b.** These Defendants' argument on the 42 U.S.C. § 1997e(e) prior physical injury issue is not well taken.

Although the stay on merits-discovery shall remain in place until Defendants' Epps and McTeer's pending motion for summary judgment [68] on the official capacity claims is resolved, the Court notes that the parties continue to be free to engage in immunity-related discovery.

A separate order in accordance with this opinion shall issue this day.

**THIS**, the 3 day of October, 2013.

Glen H. Davidson

SENIOR JUDGE

36