IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MARVIN JONES                                                                                    PLAINTIFF

v.                                                                  CIVIL ACTION NO. 4:10-CV-00011-GHD-JMV

TYSON FOODS, INC.; LEE McTEER, in His Official
Capacity as Community Correctional Director for Region I and
in His Individual Capacity; and JONATHAN BRADLEY, in His
Official Capacity as Correctional Supervisor of Leflore County
Restitution Center and in His Individual Capacity                          DEFENDANTS

## MEMORANDUM OPINION GRANTING MOTION FOR SUMMARY JUDGMENT BASED ON ELEVENTH AMENDMENT IMMUNITY FILED BY DEFENDANTS LEE McTEER AND JONATHAN BRADLEY AND DISMISSING DEFENDANT LEE McTEER AS A PARTY

Presently before the Court is a motion for summary judgment based on Eleventh Amendment immunity [68] filed by Defendants Lee McTeer and Jonathan Bradley in their official capacities. Upon due consideration, the Court finds that the motion [68] is well taken and should be granted.

*A. Factual and Procedural Background*

Plaintiff Marvin Jones ("Plaintiff"), a former resident of Leflore County Restitution Center, brings this suit for monetary and declaratory relief, alleging that his constitutional rights were violated when he was subjected to dangerous conditions and contracted mycobacterium tuberculosis ("TB") while fulfilling the terms of his restitution at a chicken-processing plant, Tyson Foods, Inc., in Carthage, Mississippi. The alleged facts are set out in some detail in two of the Court's previous memorandum opinions in this case, *see* Mem. Ops. [57 and 59]; therefore, the Court incorporates the alleged facts set out in those opinions into this opinion, and for background purposes merely summarizes Plaintiff's claims as follows:

1

Plaintiff's amended complaint asserts under 42 U.S.C. § 1983 that Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment, Thirteenth Amendment right to be free from slavery and/or involuntary servitude, and Fourteenth Amendment due process rights. Plaintiff also alleges that Defendants failed to adequately train and supervise their administration, staff, and/or faculty not to violate a resident's Eighth, Thirteenth, and Fourteenth Amendment rights, which was the proximate cause of Plaintiff's injuries. Plaintiff's amended complaint asserts under 42 U.S.C. § 1985 that "Defendants conspired to deprive, by force, intimidation, or threat, [Plaintiff] from receiving his freedom after he satisfied the terms of his sentencing." Pl.'s Am. Compl. [12] ¶ 2. The amended complaint further asserts under state law that Defendants were negligent and/or grossly negligent in providing an unsanitary work environment for Plaintiff, thus causing him foreseeable harm; committed the tort of battery against Plaintiff; and subjected Plaintiff to intentional infliction of emotional distress. Plaintiff alleges that Defendants' actions were conducted "under the color and pretenses of the ordinances, policies, practices, customs, regulations, usages[,] and/or statutes of the Counties of Leflore and/or Leake, as well as the State of Mississippi." *Id.* ¶ 44. Plaintiff further alleges that it is the policy, practice, or custom of Defendants to suppress the constitutional and statutory rights of those residents entrusted to their care, *id.* ¶¶ 46–49, and that "[t]he unlawful actions of Defendants . . . were taken or ratified by final policy makers for [Leflore County Restitution Center] and thus constitute policies, practices[,] and usage sufficient to impose liability," *id.* ¶ 50. Plaintiff seeks declaratory relief that Defendants' alleged actions violated his Eighth, Thirteenth, and Fourteenth Amendment rights; nominal and actual damages for Defendants' alleged violations of his state and federal constitutional rights; compensatory and punitive damages against Defendants for the alleged state torts of negligence and gross

negligence; and the costs of litigation, including attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

Defendants Haley Barbour ("Barbour"), Christopher Epps ("Epps"), Lee McTeer ("McTeer"), and Jonathan Bradley ("Bradley) filed motions to dismiss on Eleventh Amendment immunity grounds [16, 35, & 37].[1] On September 11, 2013, the Court entered a memorandum opinion [57] and Order [56] sustaining all official-capacity claims against McTeer and Bradley, finding that McTeer and Bradley had not demonstrated they were arms of the State subject to the Eleventh Amendment shield and that Plaintiff's amended complaint established jurisdiction over McTeer and Bradley. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) ("Since here we have only a 'facial attack' and not a 'factual attack,' our review is limited to whether the complaint is sufficient to allege the jurisdiction."). The Court did note, however, that it would entertain a subsequent motion for summary judgment filed by McTeer and Bradley supporting their contention that they are arms of the State entitled to Eleventh Amendment protection on the official-capacity claims.

Accordingly, McTeer and Bradley filed the present motion for summary judgment [68] wherein they contend that they are arms of the State and entitled to Eleventh Amendment immunity on the official-capacity claims because the claims do not fall within the narrow *Ex parte Young* exception. Plaintiff has filed a response, and McTeer and Bradley have filed a reply. The matter is now ripe for review.

### B. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact

---

[1] The Court recently dismissed Barbour and Epps as parties to the action on Eleventh Amendment grounds. *See* Order [81] & Mem. Op. [82].

and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Where the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

## C. *Analysis and Discussion*

As stated, McTeer and Bradley contend in the present motion [68] and accompanying brief [69] that they are arms of the State subject to Eleventh Amendment protection and that the Eleventh Amendment bars the official-capacity claims against them because Congress has not abrogated the federal claims, the State has not waived or otherwise consented to this suit, and the claims do not fall within the *Ex parte Young* exception to Eleventh Amendment immunity. Plaintiff argues in response that this issue should not be decided before the parties have had an opportunity to engage in merits-discovery, or alternatively, that McTeer and Bradley are not entitled to Eleventh Amendment immunity because Plaintiff's claims fall within the *Ex parte Young* exception. The Court finds as follows.

### (1) Discovery Issue

The Court has freely allowed immunity-related discovery throughout this litigation; the only stay imposed on discovery was for discovery on the merits. *See* Order [22] at 1 ("all proceedings unrelated to the issue of immunity shall be stayed pending the court's ruling" on immunity motions). The parties have had an opportunity to engage in immunity-related discovery up to this point. Engaging in discovery on the merits is not necessary, nor is it proper, prior to a ruling on Eleventh Amendment immunity. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993) (quoting *In re Ayers*, 123 U.S. 443, 505, 8 S. Ct. 164, 31 L. Ed. 216 (1887) ("The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.")). Accordingly, the Court proceeds with its analysis of the present motion for summary judgment on Eleventh Amendment grounds.

5

### (2) Arms of the State

As the Court stated in its memorandum opinion [57] ruling on the Eleventh Amendment motions to dismiss, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). "The state need not be the named party in a federal lawsuit, for a state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). Because only "alter egos" or "arms of the state" can assert a state's immunity, *see Alden v. Maine*, 527 U.S. 706, 756, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999), the Court must first determine whether either of these Defendants is an alter ego or arm of the State subject to sovereign immunity.

Under Eleventh Amendment jurisprudence, only political subdivisions that "stand[ ] in the shoes of the state itself" benefit from sovereign immunity. *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000) (per curiam) (quotation marks and citation omitted); *see Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999) ("Courts are frequently put in the position of deciding whether the defendant being sued is better described as an arm of the state partaking in the privileges of Eleventh Amendment immunity or whether the defendant is actually part of a political subdivision unprotected by the Eleventh Amendment."). The Eleventh Amendment's protections do not extend to political entities that have an identity sufficiently distinct from that of the state, which includes "lesser governmental entities such as counties and municipalities." *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 596 (5th Cir. 2006).

To determine whether an entity is an arm of the state entitled to Eleventh Amendment sovereign immunity, the Court considers six factors: (1) whether the state statutes and case law

6

characterize the agency as an arm of the state; (2) the source of funding for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local rather than state-wide problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *See Raj v. LSU*, 714 F.3d 322, 328–29 (5th Cir. 2013) (citing *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991)). A defendant need not satisfy all of the factors to benefit from the Eleventh Amendment, and some factors weigh more heavily than others. *Hudson*, 174 F.3d at 681–82. Specifically, the source of funding is the most important factor, and the last two factors are least important. *Id.* at 682. The Court applies the foregoing test to each of these Defendants as follows.

### (1) McTeer

Plaintiff alleges in his amended complaint that he is suing McTeer as Community Correctional Director for Region I, which includes the Leflore County Restitution Center, and that McTeer was responsible for the day-to-day operations of the Leflore County Restitution Center while Plaintiff was a resident there. *See* Pl.'s Am. Compl. [12] ¶ 13. According to McTeer's sworn affidavit, Exhibit A to the present motion [68], the Mississippi Department of Corrections ("MDOC") has a Community Corrections Division, which is divided into three regions (Regions I, II, and III), each having a Community Corrections Director; Region I is comprised of thirty-three counties in the northern portion of Mississippi, including Leflore County; and McTeer, as Community Correctional Director for Region I, is an employee of MDOC. McTeer Aff. [70] at 1. As the Court acknowledged in its prior opinion [57], MDOC is responsible for managing and operating the correctional system for the State, and thus is an arm of the State. *See* MISS. CODE ANN. § 47–5–1. *See also Hines v. MDOC*, 239 F.3d 366, 2000 WL

1741624, *3 (5th Cir. Nov. 14, 2000) (per curiam); *Martin v. Streeter*, No. 3:11cv20–SA–DAS, 2012 WL 5269615, *2 (N.D. Miss. Oct. 24, 2012); *Ladner v. Leamon*, No. 2:12cv131–KS–MTP, 2012 WL 4507904, *1 (S.D. Miss. Sept. 28, 2012); *Clayborne v. MDOC*, No. 2:06cv250-KS-MTP, 2007 WL 2475945, *1 (S.D. Miss. Aug. 28, 2007). Based on the foregoing, the Court finds that these Defendants have shown that McTeer is an arm of the State subject to Eleventh Amendment protection.

### (2) Bradley

Plaintiff alleges in his amended complaint that he is suing Bradley as the Correctional Supervisor of Leflore County Restitution Center, and that Bradley was responsible for the day-to-day operations of the Leflore County Restitution Center while Plaintiff was a resident there. *See* Pl.'s Am. Compl. [12] ¶ 14. Leflore County Restitution Center is one of four restitution centers under MDOC where residents serve their sentences by working to pay off their court-ordered restitution.[2] As part of MDOC's duties and responsibilities under Mississippi law, it must "develop and implement diversified programs and facilities to promote, enhance, provide[,] and assure the opportunities for the successful custody, training[,] and treatment of adult offenders properly committed to the department or confined in any facility under its control." MISS. CODE ANN. § 47-5-10(h). MDOC is instructed that "[s]uch programs and facilities may include . . . restitution centers . . . ." *Id.* Although Leflore County Restitution Center clearly is a cooperative venture between the State and Leflore County ("[t]he boards of supervisors of the several counties and the governing authorities of municipalities are hereby authorized to cooperate with [MDOC] in the establishment of restitution centers"), "[s]uch centers shall be operated by [MDOC]." MISS. CODE ANN. § 99–37–19. The Mississippi Code further provides

---

[2] The other restitution centers under MDOC are located in Hinds County (Jackson), Jackson County (Pascagoula), and Rankin County (Flowood).

that "[i]t is the intent of this section that county and local government contribute only to the establishment, renovation[,] and maintenance of the physical plant of a restitution center and that [MDOC] support the operation of and have sole jurisdiction over and responsibility for offenders in such restitution program." *Id.* Also, according to McTeer's sworn affidavit, the Leflore County Restitution Center is solely owned, operated, and funded by MDOC. *See* McTeer Aff. [70] at 2. As stated above, MDOC is unquestionably an arm of the State. For the foregoing reasons, the Court finds that these Defendants have shown that Bradley is an arm of the State subject to Eleventh Amendment protection.

Because McTeer and Bradley are arms of the State, both are entitled to Eleventh Amendment immunity unless Congress has validly abrogated the State's sovereign immunity, the State has waived sovereign immunity or consented to suit, or the *Ex parte Young* doctrine renders the State amenable to suit on the claims against McTeer and/or Bradley. For the reasons stated below, the Court finds that McTeer and Bradley are entitled to sovereign immunity on the official-capacity claims.

### (3) **Abrogation and Waiver/Consent**

As the Court has already stated in its memorandum opinion [57] ruling on the Eleventh Amendment motions to dismiss, neither § 1983 nor § 1985 abrogate the State's Eleventh Amendment immunity from this suit. *See Quern v. Jordan*, 440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); *Early v. So. Univ. & Agr. & Mech. Coll. Bd. of Supervisors*, 252 F. App'x 698, 700 (5th Cir. 2007) (per curiam) (citing *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981)). Also, it is well established that the State of Mississippi is absolutely immune from suit on § 1983 and § 1985 claims under the Eleventh Amendment. *See Stokes v. Ward*, 132 F.3d 1455, 1997

WL 802955, *2 (5th Cir. Nov. 21, 1997) (per curiam); *Bogard v. Cook*, 586 F.2d 399, 410 (5th Cir. 1978). The Mississippi Tort Claims Act expressly preserves the State's Eleventh Amendment immunity on claims brought in federal court. *See* MISS. CODE ANN. §§ 11–46–3(1), 11–46–5(4). Further, the State has not evidenced waiver by asserting claims of its own or evidencing an intent to defend the suit against it on the merits. *See Neinast v. Texas*, 217 F.3d 275, 279 (5th Cir. 2000) (internal footnotes omitted). In the case *sub judice*, McTeer and Bradley initially raised the sovereign immunity defense prior to answering the amended complaint and have not voluntarily asserted claims of their own or otherwise voluntarily invoked federal court jurisdiction. Accordingly, the Court finds that the State has neither waived nor consented to suit on any of the official-capacity claims asserted in this action against McTeer and/or Bradley. The Court now examines whether Plaintiff's claims against McTeer and/or Bradley in their official capacities may nevertheless be brought under *Ex parte Young*.

### (4) *Ex parte Young* Doctrine

In determining whether the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), avoids an Eleventh Amendment bar to suit, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Cantu Servs., Inc. v. Roberie*, —— F. App'x ——, 2013 WL 3420524, *3 (5th Cir. July 9, 2013) (quoting *Va. Office for Prot. & Advocacy v. Stewart*, —— U.S. ——, 131 S. Ct. 1632, 1639, 179 L. Ed. 2d 675 (2011) (in turn quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002) (internal citation and quotation marks omitted))). *Ex parte Young* thus allows suit to be brought against a state officer in federal court for the purpose of enforcing the Supremacy Clause to the Constitution if the following criteria are met: (1) the plaintiff has pleaded his case

against the state official responsible for enforcing the law at issue in that person's official capacity; (2) the plaintiff has alleged an ongoing violation of federal law, <u>not state law</u>, as federal courts may not instruct state officials on state law, thereby significantly intruding on state sovereignty and failing to enforce the Supremacy Clause; and (3) the plaintiff has requested the proper relief, that is, prospective, injunctive relief, or relief that is ancillary to prospective relief.

At the outset of this portion of the analysis, the Court notes that "since state law claims do not implicate federal rights or federal supremacy concerns, the [*Ex parte*] *Young* exception does not apply to <u>state</u> law claims brought against the state" and thus such claims are barred against state officials in their official capacities, as suits against the state itself. *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) and *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)). Therefore, the Eleventh Amendment bars Plaintiff's state law claims to the extent they are asserted against McTeer and Bradley in their official capacities, and such claims shall be dismissed. *See also Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

Next, the Court notes that Plaintiff concedes that he has no viable § 1983 or § 1985 claim for monetary damages against McTeer and Bradley in their official capacities. *See* Pl.'s Mem. Br. Supp. Resp. Opp'n to Mot. Dismiss [24] at 4. Thus, the Court finds that any § 1983 or § 1985 claims for monetary relief against McTeer and Bradley in their official capacities shall be dismissed. The Court now turns to the remaining claims against McTeer and Bradley in their official capacities—the § 1983 and § 1985 claims for declaratory relief.

Suits may be brought against a state official in certain situations where that suit seeks only prospective injunctive or declaratory relief in order to end a continuing violation of federal

11

law. *Walker v. Livingston*, 381 F. App'x 477, 478 (5th Cir. 2010) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996)). McTeer and Bradley maintain that Plaintiff seeks declaratory relief under § 1983 and § 1985 for past conduct only, and not for the prospective relief that is allowed by *Ex parte Young*. Plaintiff argues that the relief he seeks is prospective relief that fits the narrow exception of *Ex parte Young*.

In the Court's requisite "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective," *see, e.g., Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997), the Court notes that Plaintiff's prayer for relief in his amended complaint includes a request for a declaration from the Court that "Defendants' actions, as herein described, violated Plaintiff's constitutional rights under the Eighth, Thirteenth[,] and Fourteenth Amendments to the United States Constitution," *see* Pl.'s Am. Compl. [12] at 15(b). Plaintiff's amended complaint specifically asserts that **(1)** Defendants violated Plaintiff's Thirteenth Amendment right to be free from slavery and/or involuntary servitude by forcefully detaining Plaintiff at the Restitution Center even after he had satisfied his restitution, as part of a conspiracy "to deprive, by force[,] intimidation[,] or threat, [Plaintiff] from receiving his freedom after he satisfied the terms of his sentencing," to "deny [Plaintiff] his civil rights," and "to intimidate him," *id.* ¶¶ 2, 3, 40, 59, 63, 66–70, 79–82; **(2)** Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment when they subjected Plaintiff and others to the inherently harmful conditions of a chicken plant wherein workers are forced to work sometimes "covered in chicken feces" and "in an environment filled with dust, feathers, and chicken feces," even if physically ill, and alongside illegal immigrants who may carry diseases such as TB and workers who may "urinat[e] close to the slaughter line," *id.* ¶¶ 15, 20, 24–26, 31,

52, 58, 62, 71–75; **(3)** Plaintiff has been denied his Fourteenth Amendment procedural and substantive due process rights as a result of Defendants' actions, *id.* ¶¶ 64, 76–78; and **(4)** Defendants violated § 1983 by failing to adequately train and supervise their administration, staff, and/or faculty not to violate a resident's Eighth, Thirteenth, and Fourteenth Amendment rights, which was the proximate cause of Plaintiff's injuries, *id.* ¶¶ 53, 83–87. Plaintiff further asserts that the alleged actions of Defendants were all taken as part of Defendants' policy, practice, or custom, and that Defendants violate the Eighth, Thirteenth, and Fourteenth Amendment rights of those residents entrusted to their care. *Id.* ¶¶ 44, 47–49.

Plaintiff alleges that all constitutional violations occurred while he was a resident at Leflore County Restitution Center, acknowledges that he is no longer a resident there, and asserts that he continues to suffer from TB, which he contracted while he was a resident there. Although Plaintiff unquestionably has alleged an ongoing injury by asserting that he continues to suffer from TB, he has not alleged that an ongoing violation of federal law was committed by either McTeer or Bradley. *See Papasan v. Allain*, 478 U.S. 265, 277–78, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ("*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past . . . ."); *see also Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985) (any possible violation of federal law ended when the relevant federal statute was changed; thus *Ex parte Young* exception did not apply and Eleventh Amendment barred action). Instead, Plaintiff seeks a declaration regarding the alleged past constitutional violations of McTeer and Bradley—not for any continuing conduct or for conduct that is likely to be repeated in the future. The declaration Plaintiff seeks regarding the alleged past constitutional violations of McTeer and Bradley is precisely the type of relief prohibited

under *Ex parte Young*. Thus, Plaintiff's requests for declaratory relief are barred with respect to his claims against McTeer and Bradley in their official capacities.

As stated in the Court's prior opinion [82] ruling on the Eleventh Amendment issues presented by Barbour and Epps, to the extent Plaintiff's allegations can be read as an attempt to assert an ongoing violation of federal law with respect to other residents of Leflore County Restitution Center, Plaintiff does not have standing under Article III of the United States Constitution to enforce the rights of the other residents. Under Article III, a litigant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 500, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). Although there are rare instances in which a litigant can assert the rights of third parties not before the Court, *see Kowalski v. Tesmer*, 543 U.S. 125, 129–30, 125 S. Ct. 564, 160 L. Ed. 2d 519 (2004), Plaintiff has not demonstrated that any exception to the general prohibition against third-party standing would apply in this case.

For all of the foregoing reasons, Plaintiff's official-capacity claims against McTeer and Bradley must be dismissed on Eleventh Amendment immunity grounds.

### D. Conclusion

In sum, the motion for summary judgment based on Eleventh Amendment immunity [68] filed by McTeer and Bradley is **GRANTED**; all claims asserted against McTeer and Bradley in their official capacities are **DISMISSED**; with no remaining viable claims against McTeer, McTeer is **DISMISSED** as a party to this action; and the stay is **LIFTED**.

A separate order in accordance with this opinion shall issue this day.

THIS, the 28th day of October, 2013.

SENIOR JUDGE

14